## 57371. ECHOLS v. THE STATE.

QUILLIAN, Presiding Judge.

The defendant appeals his conviction of rape, kidnapping, and aggravated sodomy. *Held:*

1. The general grounds are without merit. There is ample evidence to support the verdict of the jury and the judgment of the court.

2. The defendant entered a "special plea of mental incompetency to stand trial" under Code Ann. § 27-1502 (Ga. L. 1977, pp. 1293, 1296). Defendant argues that the trial court erred in charging the jury: "The law provides that a person inflicted with insanity or a lunatic *'shall be'* tried or put upon trial for any offense during the time he is inflicted with such insanity." (Emphasis supplied by defendant.) This is an obvious lapsus linguae of Code Ann. § 27-1504 (Code § 27-1504).

Some confusion exists as to the proper plea to raise the issue of the ability of a defendant to stand trial. It has been the custom in Georgia to entertain two types of "insanity" pleas. There is, on the merits, a general plea of not guilty by reason of insanity. *Durham v. State,* 239 Ga. 697(1) (238 SE2d 334). There is also a "special plea of insanity." *Spencer v. State,* 236 Ga. 697(2) (224 SE2d 910). The Supreme Court held that "the issue raised by a special plea of insanity at the time of the trial 'is not, whether the defendant can distinguish between right and wrong, but

is, whether he is capable at the time of the trial of understanding the nature and object of the proceedings going on against him and rightly comprehends his own condition in reference to such proceedings, and is capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demands.'" *Crawford v. State,* 240 Ga. 321, 326 (240 SE2d 824). *Crawford* established that the term "insanity," as it relates to the defendant's ability to assist in his trial, is a misnomer. Legal "insanity" relates only to the ability of a defendant to distinguish between right and wrong, and whether he had a delusional compulsion which overmastered his will. Code Ann. §§ 26-702, 26-703 (CCG §§ 26-702, 26-703; Ga. L. 1968, pp. 1249, 1270). It remains to be seen how the law will adapt to the test of Code Ann. § 27-1503 (Ga. L. 1977, pp. 1293, 1295). See dissent, *Shirley v. State,* 149 Ga. App. 194. All of these tests concern *mental responsibility* of a defendant for a crime— *at the time the alleged offense was committed.* Whereas, a "special plea of insanity" relates only to the *mental competency* of the defendant to participate in his trial—*at the time of the trial. Crawford v. State,* 240 Ga. 321, 326, supra. Thus, the so-called "special plea of insanity" does not relate to "insanity" (mental responsibility), but to "mental competency." This is where confusion arises.

The Georgia Penal Code of 1817 provided for acquittal of a "lunatic or insane person." Code §§ III, V. In the Georgia Penal Code of 1833 there first appeared "Sec. XLIII. No lunatic or person afflicted with insanity shall be tried, or put upon his trial for any offense, during the time he is afflicted with such lunacy or insanity." This is the progenitor of our current Code Ann. § 27-1504. In the Georgia Penal Code of 1861, immediately following Code § 4192—which set forth the insanity test, § 4195 provided: "Whenever the plea of insanity is filed it shall be the duty of the court to cause the issue on that plea to be first tried by a special jury, and if found to be true, the Court shall order the defendant to be delivered to the Superintendent of the Asylum, there to remain until discharged by the General Assembly." The old Sec. XLIII of the Code of 1833 was revised in the Penal Code of 1861, and became § 4559 Sec. XLIV which stated: "No lunatic or person afflicted

with insanity, shall be tried or put upon his trial for any offense, during the time he is afflicted with such lunacy or insanity, *which shall be tried in the manner hereinbefore pointed out, where the plea of insanity at the time of offense is filed, and on being found true, the prisoner shall be disposed of in like manner."* (Emphasis supplied.)

In summary, the Georgia Penal Code first created the insanity defense *(at the time of the act),* and later provided for the trial of that issue before a special jury, prior to the main trial. Then they enacted the statute which forbade the trial of "a lunatic or person afflicted with insanity" *at the time of the trial,* and later specified that this issue be tried in tandem with the general plea of insanity before a special jury. This latter section was the genesis of the phrase — "special plea of insanity," which relates only to the ability of the defendant to participate in his defense at the time of the trial. Accordingly, for a time there was a special jury convened for the purpose of hearing evidence on a general plea of not guilty by reason of insanity — *at the time of the act,* and a "special plea of insanity" *at the time of the trial.*

However, our Supreme Court, in *Long v. State,* 38 Ga. 491, 507, in which the defendant entered a plea of not guilty by reason of insanity at the time of the act, stated: "We can see no necessity, in such a case, for the special provision for a 'plea of insanity' and its trial by a 'special jury' . . . [because, as was stated earlier] in all crimes, one of the ingredients of the offense that there shall be a joint operation of act and intent, and an insane person cannot, in a legal sense, have any intent." Thus, the legislature in 3 Code of 1895, p. 248, deleted the section requiring a special trial on the general plea of insanity and placed the "plea of insanity" statute as § 951 (4299) in the section forbidding trial of "lunatics and insane persons." This is a rather lengthy explanation of why we have a "special plea of insanity" — *at the time of trial,* which deals not with insanity but competency of a defendant to assist in his trial—in the Criminal Procedure Code §§ 27-1502 and 27-1504 in the Code of 1933 and today, rather than under the general insanity statutes of Code Ann. § 26-702 and 26-703.

Although the Code of 1933 perpetuated the

misconception that "whenever a plea of insanity is filed, it shall be the duty of the court to cause the issue on that plea to be first tried by a special jury"—although the issue was not insanity—but mental competence to assist in his defense at trial (Code § 27-1502), the legislature of 1977 finally and correctly delineated the concepts of "mental responsibility" and "mental competency." Code Ann. § 27-1502 was repealed and re-enacted by eliminating any reference to "insanity" and dealt only with: "Plea of Mental Incompetency to Stand Trial," by providing that "[w]henever a plea is filed that a defendant in a criminal case is mentally incompetent to stand trial, it shall be the duty of the court to cause the issue of the defendant's mental competency to stand trial to be first tried by a special jury . . . [etc]." Ga. L. 1977, pp. 1293, 1296. However, Code Ann. § 27-1504 prohibiting the trial of lunatics and insane persons remains intact. It is evident to us that the term "mental incompetency" of Code Ann. § 27-1502 includes those mental states embraced in the terms "lunatic" and "insane person" of Code Ann. § 27-1504, as they all relate solely to the mental ability or capacity of a defendant to intelligently participate in his trial. Thus, enactment of Code Ann. § 27-1502 in 1977, by implication, repealed Code Ann. § 27-1504. If this were not true, a defendant could now enter a special plea of mental incompetency under Code Ann. § 27-1502 (as in this case), another plea of "lunacy" under Code Ann. § 27-1504, and a third plea of "insanity at the time of trial"—under Code Ann. § 27-1504, and demand a special jury trial on all three issues even though all three relate to the same mental state. We are sure that no such result was envisioned by the legislature. There is only one pretrial issue which relates to the ability or capacity of a defendant to participate in his trial, and that is his "mental competence" under Code Ann. § 27-1502.

Such plea of "mental incompetency" does not involve any issue of insanity. *Crawford v. State,* 240 Ga. 321, 326, supra. Legal insanity relates only to "mental responsibility" of a defendant for his actions *at the time of the alleged criminal act.* "Mental competence" relates only to the ability of the defendant, *at the time of the trial,* to intelligently participate in his trial—as tested under

the three criteria of *Crawford.* See dissent, *Shirley v. State,* 149 Ga. App. 194, supra. Accordingly, the charge to the jury should not attempt to combine definitions of insanity with that of mental incompetency, as was done by the judge in the instant case. However, his guidelines —the Criminal Jury Pattern Instructions also combine the definitions of insanity (under Code Ann. § 27-1504), and mental incompetency (under Code Ann. § 27-1502). See Jury Instructions, Criminal, 23A Insanity, At The Time of Trial.

Professor Weihofen, in his treatise, Weihofen, Mental Disorder as a Criminal Defense, correctly concluded that the word "insanity" is used by courts and legislators indiscriminately to convey either of two meanings: (1) any type or degree of mental defect or disease, or (2) such a degree of mental defect or disease as to entail legal consequences" such as avoidance of a contract or will, the need for a guardian, civil commitment to a hospital or denial of criminal responsibility for an illegal act. Id. 5. See *Pennewell v. State,* 148 Ga. App 611 (251 SE2d 832). Lawyers, legislators, and jurists could avoid much of this confusion if we restricted the term "insanity" to the test of criminal responsibility for an alleged act— *at the time of the act,* and "mental competence" to the ability of a defendant *at the time of trial* to intelligently participate in his trial under Code Ann. § 27-1502.

Although the instructions in the instant case are not to be commended, neither are they so confusing as to require reversal. The trial court did commit a lapsus linguae but the remainder of his instructions make it crystal clear that "[t]he only issue which the law says that you are to determine in a case like this, that you are concerned with, is whether the defendant is mentally competent to stand trial at this time . . ." Then the court gave the criteria of *Crawford,* supra, and followed the lapsus linguae with another correct statement that "if you find that Mr. Echols is incompetent to stand trial at this time, the form of your verdict would simply be that he is incompetent at this time and is not capable of understanding the nature and object of the proceedings . . . [etc.]" *Siegel v. State,* 206 Ga. 252 (2) (56 SE2d 512). The

correct charge was given so many times it is highly probable that the incorrect statement did not confuse the jury. *Jones v. State,* 139 Ga. App. 679, 680 (229 SE2d 149); *Collins v. State,* 145 Ga. App. 346 (4) (243 SE2d 718); *Leonard v. State,* 146 Ga. App. 439 (5) (246 SE2d 450). This enumeration is without merit.

3. The third enumeration complains of the failure of the state to comply with defendant's motion to produce. The enumeration of error was limited "to scientific tests which constituted evidence exculpatory to appellant." Although the enumeration contained but one category of evidence, the brief argued several categories of evidence which were alleged to have been suppressed. An enumeration of error cannot be enlarged at the appellate level by statements in the briefs of counsel to include issues not made in the enumeration. *Key v. State,* 147 Ga. App. 800 (2) (250 SE2d 527).

The state did not introduce any evidence of scientific tests. Defendant argues that "since the State failed to submit the resulting scientific tests into evidence, that these tests were favorable to Appellant and would have disproved the State's case and would have aided Appellant in his defense." Counsel has failed to illustrate or elucidate any basis for this conclusion. The alleged victim identified the defendant, gave such an accurate description of his car and tag number that the police experienced no difficulty in apprehending him. The trial judge stated that he had made an in camera inspection of the prosecutor's file and, "I saw nothing there that I think would be favorable to his defense." The court again reviewed the DA's file during voir dire and advised counsel that if he found anything favorable he would notify him. The prosecutor stated in court, in response to the query of the court as to whether he had "anything that's favorable to the accused," that there was "[n]one that I know of . . ." The record shows that the defendant's counsel was permitted to examine the prosecutor's file and was given copies of statements. The "Brady requirements" were met by the court's in camera inspection, counsel's inspection of the state's file, and disclosure that they did not intend to utilize any laboratory evidence. *Toole v. State,* 146 Ga. App. 305, 307

(246 SE2d 338); *Hall v. State,* 241 Ga. 252 (2) (244 SE2d 833). Defendant has further failed to show that he was harmed by any allegedly suppressed evidence. *Burger v. State,* 242 Ga. 28, 32 (247 SE2d 834). We find no merit in this enumeration.

4. Defendant alleges the trial court erred in failing to give two of his requested instructions on reasonable doubt and insanity.

(a) The court gave a correct charge on reasonable doubt. A failure to charge in the exact language requested by counsel is not error where the charge given substantially and correctly covered the same principle of law. *Pollard v. State,* 236 Ga. 587 (3) (224 SE2d 420).

(b) Counsel for defendant requested a charge on "delusional compulsion" insanity. The court refused to give it, with the comment: "there isn't any evidence that this man has a delusional compulsion, so I'm not going to charge it." The doctor stated that he diagnosed the defendant as "suffering from schizophrenia, paranoid type," and that it was possible for him to have "defensive mechanisms, such as delusions . . ." On further examination he stated that "there was no evidence that Mr. Echols was in a psychotic state at that time ... We had no evidence that he was suffering from any delusions at that time." He was "sane on that date." We have noted before that psychiatrists and psychologists exemplify the mental condition of their patients —not in terms of "sane" or "insane," or being able to distinguish between right and wrong, but in terms of "neuroses" and "psychoses," which resulted in "psychotic decompensation." The doctor here stated that "psychotic decompensation" was what "ordinary people . . . say for a nervous breakdown, going insane." That may well be a fact, but it is also a fact that our Criminal Code deals with "insane" defendants—not "psychotic" mental patients.

Although there was other evidence of auditory hallucinations experienced by the defendant, there was no evidence of "delusional compulsion" *at the time of this offense.* We agree with the trial court. There was no evidence raising the issue of "delusional compulsion." On the contrary, there was evidence that there were no "delusions" at the time of the offense. The failure to

charge thereon was not error. *Graham v. State,* 236 Ga. 378 (I) (223 SE2d 803).

5. Defendant argues that the trial court erred in admitting evidence of an independent and separate crime. The state presented the testimony of another woman that she had been raped by this same defendant approximately three months before the incident charged here. She identified the defendant and his car as the one used by him to abduct her. The prosecutor enumerated ten similarities in the alleged rape of this witness and the alleged victim in the instant case.

The general rule is that in a prosecution for a particular crime, evidence that tends to show the present defendant has committed another crime, wholly independent from the one for which he is being tried, even though it be of the same type, is irrelevant and inadmissible. *Natson v. State,* 242 Ga. 618, 620 (250 SE2d 420). Yet, there are recognized exceptions to the general rule where there is a sufficient similarity or connection between the independent crime and the present offense, that proof of the former tends to prove the latter. *Clemson v. State,* 239 Ga. 357 (3) (236 SE2d 663). This exception has been liberally extended in sex crimes (*Sudlow v. State,* 140 Ga. App. 146, 147 (230 SE2d 106)), for the purpose of identifying the accused by showing common motive, plan, scheme, bent of mind, or course of conduct. *Rivers v. State,* 147 Ga. App. 19 (1) (248 SE2d 31). There were sufficient similarities in the two sexual offenses that would authorize the jury to conclude that the defendant was the perpetrator of both. This enumeration is not meritorious.

*Judgment affirmed. Smith and Birdsong, JJ., concur.*

Submitted March 12, 1979 — Decided April 13, 1979.

*R. Allen Hunt, Louise T. Hornsby,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, R. David Petersen, Assistant District Attorneys,* for appellee.