72795. ALMOND v. THE STATE.
(349 SE2d 482)

BIRDSONG, Presiding Judge.

The defendant, Rowena Almond, a/k/a Rhonda Mann and Rowena Johnson, was charged with three counts of aggravated assault

upon three police officers — two by the use of a knife, and one by the use of a pistol. She was acquitted of the assault with the pistol and found "guilty but mentally ill" of the remaining two assaults. After the trial started, it became apparent to the trial judge that an issue of competency of the defendant was raised by her conduct and her statements. She insisted upon acting as her attorney after advising the court she had been elected President of the United States (but refused to serve), was the present Commander-in-Chief of the CIA and the Treasury Department, was the head of Interpol, a judge in the secret service (and in that capacity had ordered the assassination of John Kennedy, Robert Kennedy, Jimmy Hoffa and President Reagan).

The court directed an immediate competency hearing, using the trial jury already impaneled, and ordered the State to assume the burden of proof. The district attorney called defendant's appointed attorney for "cross-examination." Ms. Almond objected, first on the ground that "[h]e is unqualified," and secondly that "[h]e would be the last person I would want to say anything about me." Defendant's counsel testified that he was an attorney, a member of the State Bar of Georgia, and was familiar with the incompetency standards. He said he had "consulted with [Almond] with regard to her case . . . she understands what she is charged with and she understands the circumstances surrounding the arrest . . . what happened that day, and I think she knows where we are and what is going on here." The State then called Almond's ex-husband who testified that Ms. Almond had been first hospitalized for mental illness in 1963 and had been seeing a psychiatrist for two years prior to that time. She has been hospitalized 30-40 times for mental problems. She has been delusional since the early 1960's. She is a chronic schizophrenic and has many delusions, e.g., head of the CIA, President of the U. S., that someone is trying to take her "body parts," and "these delusions seem to have more possession of her, dominate her activities and thinking, more gradually through the years."

Almond testified that she does have amnesia and there are gaps in her memory, but she has a better than average memory of the night of October 17th, the night of this incident. She called her husband to have the police pick her up. The police came out — 38 of them, and they faked an assault. She disarmed 30 of them because she had heard people disguise themselves as police and kill other people, and she knew the Gainesville SWAT team was "going to get me" to prevent her from talking about the Reagan assassination attempt.

During the pre-charge conference on the competency hearing, Ms. Almond requested a sanity hearing but the court advised her "[t]his is a different question. . . ." The court explained to the defendant that if she was found incompetent he was required to send

her "to the Department of Human Resources. . . . ALMOND: They always kick me out in a few days. You have to have a legal charge. . . . I have to get a legal charge on me or they won't keep me." Almond's position was: "I don't claim that I'm not insane, I'm claiming that I'm not incompetent. I'm claiming that I'm the craziest person in the world, but I'm not incompetent." The jury found Almond competent and the trial proceeded. Almond was found guilty but mentally ill on two counts of aggravated assault and she brings this appeal. *Held*:

1. The purpose of a competency hearing is to determine the mental ability of the defendant, at the time of trial, to intelligently participate in his or her trial. *Echols v. State*, 149 Ga. App. 620, 621 (255 SE2d 92); OCGA § 17-7-130. A special problem is posed when the defendant insists upon acting as his or her counsel during a competency hearing. By definition, if the defendant is actually incompetent, he is not competent to defend himself. See *Echols*, supra. Here, there was sufficient indicia of incompetency to cause the trial court, sua sponte, to doubt the competency of the defendant. Under such circumstances, it is essential that the possibly incompetent defendant be represented, or fully assisted by competent counsel. However, in this instance, the State called the appointed counsel as the first witness against the defendant, on cross-examination, and proceeded to qualify defendant's counsel as to his expertise as a lawyer and his familiarity with the competency question. Following this base, the State extracted evidence from, and the opinion of, the defendant's appointed counsel, which had been gained during his representation of the defendant, that he had consulted with the defendant about this incident, and "she understands what she is charged with and she understands the circumstances surrounding the arrest . . . what happened that day, and I think she knows where we are and what is going on here."

The issues posited by this procedure are twofold: (1) whether it is legally permissible for the State to call defendant's counsel as a witness for the purpose of extracting facts and counsel's opinion as to his client's competency, which is gained from his participation in the attorney-client relationship with the defendant, and (2) when the competency of a defendant is placed in issue, is it permissible to let a possibly incompetent defendant represent herself without the concurrent assistance of counsel?

Our Code, OCGA § 24-9-25, provides in pertinent part: "No attorney shall be competent or compellable to testify for or against his client to any matter or thing, the knowledge of which he may have acquired from his client by virtue of his employment as attorney. . . ."

The American Bar Association, in its Standards Relating to the

Administration of Criminal Justice, was concerned with the "lawyer's fiduciary position. He holds his client's information and interests in trust, and it is his obligation to act for the protection of those interests even at the expense of his own." Id. at 113. Our State Bar Rules & Regulations require preservation of the confidences and secrets of the client. " 'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be detrimental to the client." DR 4-101 (A). A lawyer may reveal a confidence or secret of his client only with the consent of the client or when permitted by court order or the disciplinary rules. DR 4-101 (B), (C). Hence, information gained through representation of a client is to be held in confidence and should not be used to the detriment of the client. "Any mental or physical condition of a client that renders him incapable of making a considered judgment on his own behalf casts additional responsibilities upon his lawyer." EC 7-12. In the same vein, where it is possible the defendant is incapable of making considered judgments, as in the instant case, additional responsibilities are cast upon the trial judge, particularly when such a defendant insists upon acting as his own counsel.

The evidence in the case at bar shows the defendant has been under psychiatric care for more than 20 years and hospitalized for the psychosis of schizophrenia on more than 30 occasions. The testimony of the ex-husband also established that defendant's current schizophrenia was of the paranoid type and chronic. The total absence of expert testimony as to the competency of this defendant, in view of the extensive history of incompetence and psychotic episodes, and under the bizarre circumstances of this incident which caused the trial judge, sua sponte, to call for an immediate competency hearing, also called for counsel to assist the accused at *all* times. However, the State called the defendant's only counsel as a witness against her, and left the possibly incompetent defendant to fend for herself. Although this issue has not been enumerated as error, we find it sufficiently similar to the type of egregious error proscribed in OCGA § 5-5-24 (c) which permits the appellate court to consider substantial error which is harmful as a matter of law, regardless of whether objection was made. In essence, we view as fundamentally unfair and a denial of due process, any procedure which would deprive a possibly incompetent defendant of the full assistance of counsel, particularly during the hearing on defendant's incompetency, where the evidence was so compelling as to the issue of defendant's incompetency that the trial court sua sponte called the hearing. The U. S. Supreme Court, in *Gideon v. Wainwright*, 372 U. S. 335, 340 (83 SC 792, 9 LE2d 799), held the Sixth Amendment right to counsel was "so fundamental and

essential to a fair trial, and so, to due process of law, that it is made obligatory upon the States by the Fourteenth Amendment." Further, in *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53), in which the accused had been diagnosed as a chronic paranoid schizophrenic, the same as in the instant case, the Supreme Court held that where the trial court found the accused's behavior so bizarre that he, sua sponte, ordered psychiatric examination and the accused was committed to a psychiatric hospital and returned for trial six weeks later, under sedation, that "[w]hen a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue, if the defendant cannot otherwise afford one." In *Ake*, supra, the Supreme Court found that a state's rule of waiver "does not apply to fundamental trial error," and that federal constitutional errors are "fundamental." They concluded that when a state brings its judicial power to bear on an indigent defendant in a criminal proceeding "it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle [is] grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness. . . ."

While in the instant case sanity was an issue, we are concerned with the competency issue, and the trial court's procedure which permitted the possibly incompetent defendant to represent herself without the assistance of counsel during the examination of her appointed counsel. The Supreme Court, in *Evitts v. Lucey*, 469 U. S. 387 (105 SC 830, 83 LE2d 821), held that "[t]he defendant's liberty depends on his ability to present his case in the face of 'the intricacies of the law and the advocacy of the public prosecutor,' [Cit.]; a criminal trial is thus not conducted in accord with due process of law unless the defendant has counsel to represent him . . . whether retained or appointed, who plays the role necessary to ensure that the trial is fair." 83 LE2d 829.

Our court has, in the past, considered a criminal case on its merits, even in the total absence of any filing of enumerations of error. *Toliver v. State*, 176 Ga. App. 257 (335 SE2d 489); *DeBroux v. State*, 176 Ga. App. 81 (335 SE2d 170). Accordingly, we will consider this issue in the absence of an enumeration of error, for we cannot say as a matter of law, that if the defendant had the assistance of counsel when her appointed counsel was called as a witness against her to establish her competency, that proper objection would not have been made, or favorable testimony could not have been elicited. We will note that at a later time in the trial, the court required appointed counsel to assume the full duty of representation of defendant. At that time defendant's counsel stated, when referring to defendant: "I

do have some difficulty communicating with her at times. . . ." If such information had been elicited, or volunteered, during the competency hearing, a different result may have been obtained.

In addition, we abjure any attempt by the state to call a defendant's counsel to elicit either information from, or his opinion of the competency of his client, which was gained during the attorney-client relationship.

2. The procedure followed in *Lindsey v. State*, 252 Ga. 493 (314 SE2d 881) will be adhered to on remand. See also *Lindsey v. State*, 254 Ga. 444, 446 (330 SE2d 563).

*Appeal remanded for further proceedings. Banke, C. J., and Sognier, J., concur.*

### On Motion for Rehearing.

The State contends we have "misconstrued" our authority to "address issues not enumerated as error. . . ." The United States Supreme Court has stated the general rule many times: " 'In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.' *United States v. Atkinson*, 297 U. S. 157, 160." *Silber v. United States*, 370 U. S. 717, 718 (82 SC 1287, 8 LE2d 798); accord *Rogers v. United States*, 422 U. S. 35, 41 (95 SC 2091, 45 LE2d 1); *Lamb v. Cramer*, 285 U. S. 217, 222 (52 SC 315, 76 LE 715); *United States v. Tenn. &c. R. Co.*, 176 U. S. 242 (20 SC 370, 44 LE 452).

We consider the facts of the case at the bar to be exceptional and to seriously affect the fairness, integrity, and public reputation of these judicial proceedings, e.g., when the State calls defendant's counsel to prove the competency of his client, which has been gleaned from his representation of his client, which provides the basis for his opinion that his client is competent to stand trial in violation of a state statute. The prosecutor established that defendant's counsel had "consulted with her with regard to her case . . ." and then elicited defendant's counsel's expertise in the field of sanity and competence, and his opinion that "she understands what she is charged with and she understands the circumstances surrounding her arrest . . . what happened that day . . . she knows where we are and what is going on here." We cannot visualize a more devastating presentation to a jury on an issue of competency, or one more prejudicial, than to have the defendant's counsel swear to a jury that he is an expert, he has consulted with the defendant on this case, and that she is fully competent. Defendant's counsel effectively eliminated any doubt as to the

competency of his client. This may have been a correct assessment, but it was in direct violation of our Code, OCGA § 24-9-25.

In *Drope v. Missouri*, 420 U. S. 162 (95 SC 896, 43 LE2d 103), where the defendant had committed some "irrational acts" and a pretrial psychiatric report said defendant "had difficulty in participating," and "a difficult time relating," the court found that it would have been "the better practice to order an immediate examination. . . ." Id. at 177. They summarized "[t]he import of [their] decision" to be that "evidence of a defendant's irrational behavior, his demeanor at trial and any prior medical opinion on competence to stand trial, are all relevant in determining whether further inquiry is required. . . ." Id. at 180. Here, the defendant was irrational — even bizarre, at the time of the offenses alleged, and irrational actions and statements continued at the time of trial. The testimony of her husband established a 20-year history of hospitalization in mental hospitals, that she was a chronic paranoid schizophrenic, and her "delusions seem to have more possession of her, dominate her activities and thinking, more gradually through the years," provided sufficient indicia of the necessity of a current hearing of defendant's competence.

We find no waiver by defendant not raising this issue at trial, because at the time she required counsel the most, her competency hearing, the court deprived her of her counsel to use his testimony against her, and as the Supreme Court concluded: "[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly and intelligently waive his right to have the court determine his capacity to stand trial." *Drope*, supra at 176.

*Motion for rehearing denied.*

DECIDED SEPTEMBER 17, 1986 —
REHEARING DENIED OCTOBER 8, 1986 

*Cliff L. Jolliff*, for appellant.
*Bruce L. Udolf, District Attorney, William M. Brownell, Jr., Assistant District Attorney*, for appellee.