A91A1881, A92A0221. CARVER v. THE STATE (two cases).
(416 SE2d 810)

McMURRAY, Presiding Judge.

This is the second appearance of these cases. In *Carver v. State,* 198 Ga. App. 676 (403 SE2d 230) (two cases), this Court remanded the appeals and directed the trial court to determine whether defendant fairly waived his right to post-conviction representation. The cases were also remanded to the trial court for a hearing and appropriate findings concerning the issue of ineffective assistance of counsel. The records from the first appeals were reassembled for consideration of the cases sub judice.

Defendant was charged, via multi-count indictment, with aggravated assault upon a peace officer and four counts of felony obstruction of an officer. Defendant was charged in a separate indictment with two counts of forgery in the first degree. Defendant filed, pro se, demands for speedy trials and pleaded not guilty to the crimes charged in both indictments.

On November 13, 1989, the trial court called "the case . . . of State of Georgia v. Jerry Carver" and attorney W. T. Straughan appeared and announced ready for defendant. A panel of 51 prospective jurors was assembled to try defendant on the indictment charging him with aggravated assault upon a peace officer and four counts of

felony obstruction of an officer.[1] The trial court asked the statutory questions and the panel indicated that they could be impartial in reaching a verdict and that they could decide the case based solely on the evidence presented at trial. Voir dire continued and a jury was selected. The following then transpired:

"THE COURT: Mr. Straughan, I do not believe that I would want to select another jury out of this panel and I'm willing to forego the selection of that jury and try the next case[, i.e., the charges in the indictment charging defendant with two counts of forgery in the first degree,] at a later time if the defendant is willing to withdraw his demand [for speedy trial] with respect to that case. You need to ask him about that. MR. STRAUGHAN: Very well, excuse me. . . . (Mr. Straughan confers with defendant) MR. STRAUGHAN: The defendant desires, I believe, to go ahead and choose the second jury at this time. Is that not correct? [DEFENDANT]: Yes. MR. STRAUGHAN: He desires to go forward in lieu of continuing the second case. THE COURT: Okay. Very Well."

During the afternoon of November 13, 1989, the panel that was before defendant on the indictment charging him with aggravated assault upon a peace officer and four counts of felony obstruction of an officer was reassembled. The trial court instructed the panel that defendant was charged with two counts of forgery in the first degree and then qualified the prospective jurors with the statutory questions. The panel indicated that they could be impartial in reaching a verdict and that they could decide the case based solely on the evidence presented at trial. The following then transpired: "All right, gentlemen, the panel appears to be qualified. Mr. [Frederick] Mullis[, the State's attorney,] you may voir dire. MR. MULLIS: Your Honor, I have no further questions. THE COURT: Mr. Straughan. MR. STRAUGHAN: Yes, sir. Thank you. Ladies and gentlemen, a rare occasion when we have two juries in an afternoon or a day but this is a requirement that this defendant desires to have his cases heard and

---

[1] The dissent states that "a panel of 51 jurors was assembled and sworn for the trial of the two cases pending against the defendant." The trial transcript of the case wherein defendant was tried for aggravated assault upon a peace officer and four counts of felony obstruction of an officer reveals that 52 people were called for jury service, but that only 51 prospective jurors were assembled because one person did not appear for jury service. Further, the voir dire transcript in this case reveals that the trial court disqualified six of the 51 propsective jurors because two were law enforcement officers, two were residents of a county other than the county of defendant's trial, one was a member of the Grand Jury that indicted defendant and one had been prejudiced by outside communications. It was later shown that a member of the jury panel was a prosecutrix and a witness under the indictment charging defendant with two counts of forgery in the first degree. However, the trial transcripts in the cases sub judice reveal that the trial court did not disqualify this prospective juror from the panel at trial on the case wherein defendant was tried for aggravated assault upon a peace officer and four counts of felony obstruction of an officer.

he has filed a demand [for speedy trials] with the Court, and he is saying let me tell my story. This is the reason that we're taking two juries and you have struck — some of you have been struck once, others have not. He is wanting to be tried and to do this we have to go back to you a second time.

"Ms. Frances Gillis, are you also Ms. Lanier Gillis? JUROR: Yes, I am. MR. STRAUGHAN: You are not only a witness in this case, you are a prosecutrix? JUROR: That's true. MR. STRAUGHAN: You would have a feeling already as to the guilt or innocence, would you not? JUROR: I think so. THE COURT: I did not realize she was the prosecutrix. I knew she was possibly a witness, and I do disqualify her. Go ahead." Voir dire continued and a jury was selected to try defendant on the charges that he committed two counts of forgery in the first degree. (Six members of the panel were selected to serve on both juries.) The trial court then directed jurors selected to serve for trial of the charges in the indictment charging defendant with two counts of forgery in the first degree to report for service on the morning of November 15, 1989.

On November 13 and 14, 1989, trial proceeded on the indictment charging defendant with aggravated assault upon a peace officer and four counts of felony obstruction of an officer. The evidence revealed the following: On January 5, 1989, law enforcement officers received a tip that defendant, who was then a fugitive from justice, was hiding out at a dwelling house in Wheeler County, Georgia. At about 6:00 that evening, Deputy Leon Brown of the Wheeler County Sheriff's Department went to the house with two other Wheeler County deputies, a Georgia State Trooper and a local city police officer. Deputy Brown entered a wooded area near the house to prevent defendant's flight. The other officers approached the house directly. Deputy Brown came within view of the house and was there confronted by defendant. The deputy identified himself as a law enforcement officer and defendant "lunged at [the deputy] and . . . hit [him] in the face with his fist." Defendant then seized Deputy Brown's flashlight and struck the deputy on the head. Deputy Brown was dazed, but he grabbed defendant and the men fell to the ground. Defendant again struck the deputy on the head with the flashlight. Deputy Brown struggled with defendant, soon regaining his feet and drawing his service revolver. Defendant was then subdued and the men began walking toward the house. As defendant approached one of the other officers, he again fought to escape arrest. However, Deputy Brown and other officers restrained defendant and took him into custody. From this and other evidence adduced at trial, defendant was found guilty of aggravated assault upon a peace officer and felony obstruction of an officer. (Defendant was found not guilty on three counts of felony obstruction of a peace officer.)

On November 15, 1989, defendant was tried on the indictment charging him with two counts of forgery in the first degree. This trial concluded with guilty verdicts on both counts of the indictment. Defendant was then sentenced on both indictments and the trial court informed defendant of his right to appeal and "the right to be represented on appeal by your court appointed attorney. . . ." Defendant refused assistance from his court-appointed trial counsel and later argued, pro se, timely filed motions for new trial. (Defendant raised several grounds for new trials, including an assertion that his court-appointed attorney was ineffective.) The motions for new trial were denied and defendant filed pro se appeals.

After this Court remanded the appeals in *Carver v. State*, 198 Ga. App. 676, supra, the trial court appointed attorney Dennis Mullis to represent defendant and conducted a hearing to determine whether defendant's trial attorney was ineffective. Attorney Dennis Mullis asserted virtually the same issues argued by defendant at the hearing on the earlier pro se motions for new trial. However, defendant expanded the issues, testifying that he did not receive a fair trial because five of the jurors who served at the trial on the indictment charging him with two counts of forgery in the first degree also served at the trial on the indictment charging him with aggravated assault upon a peace officer and felony obstruction of an officer. More specifically, defendant testified as follows: "[ATTORNEY DENNIS MULLIS]. Now getting off the track of ineffective assistance for a moment let's talk about the forgery case. I believe that — correct me if I'm wrong, there were members of the jury that tried you on the forgery case who were also members of the jury who had just convicted you in the aggravated assault charge? [DEFENDANT]. Yes, sir. Five. Q. Five out of twelve. So tell the Court, or refresh the Court's recollection about how that came to pass. A. I don't think there [were] but 48 prospective jurors to begin with and we picked the first jury for the aggravated assault trial and that left some that, you know, I had to pick from the same bunch. The Court offered me — the Court told me that I could drop a speedy trial issue that I had and it would allow me to pick from a fresh panel in February, the next term, or if I didn't drop the speedy trial issue I would have to pick from what I had. So I chose to pick from what I had because I felt a speedy trial violation was there. Q. Do you feel that the composition of the jury that tried you on the forgery case was affected by this? A. Sure I do. They already felt like I was a liar. They had already convicted me. Q. Same people? A. Same people. Q. All right. So you are raising that as an issue in your motion for new trial on the forgery charge? A. Yes, sir."

The trial court entered an order denying defendant's motions for new trial finding, in pertinent part, as follows: "Finally, the claim that

it was error to proceed to trial in Case No. 89R-11[, the charges under the indictment charging defendant with two counts of forgery in the first degree,] because some of the jurors who convicted defendant in Case No. 89R-10[, the charges of the indictment charging defendant with aggravated assault of a peace officer and four counts of felony obstruction of an officer,] were included in the panel from which the jury was selected is without merit. There was no showing either during jury selection or at the hearing on the motion for new trial that any juror had formed or expressed any opinion as to the guilt or innocence of the defendant, was not perfectly impartial as between the state and the defendant, was not biased either for or against the state or the defendant, or could not sit and serve as a fair and impartial juror and return a verdict based solely on evidence produced at trial, in Case No. 89R-11. Moreover, the court, in an excess of caution, expressed concern to defendant that defendant might not wish to proceed to trial under the circumstances and brought to the attention of the defendant that some of the jurors in Case No. 89R-10 might well serve on the jury in Case No. 89R-11. The defendant, evidently relying on what he perceived to be the legal effect of his demand for trial, rejected the court's suggestion of a continuance and elected to proceed to trial. Thus, any risk of harm to the defendant in the makeup of the jury was expressly and consciously assumed by him with full knowledge of the possible consequences."

Attorney Dennis Mullis filed an appeal on defendant's behalf from the convictions under both indictments. This appeal was divided into two appeals to more accurately reflect appeals from convictions under separate indictments. The appeal from defendant's convictions for two counts of forgery in the first degree is designated Case No. A92A0221. The appeal from defendant's convictions for aggravated assault upon a peace officer and felony obstruction of an officer is designated Case No. A91A1881. *Held*:

1. It is first alleged that "[t]he trial court erred in allowing the selection of a jury to try the defendant in his forgery case when that jury contained members of the defendant's previous jury on the aggravated assault charge." The State contends defendant cannot complain since he "consciously asked the court to go forward with the jurors available."

"Generally, the failure of a party to raise an objection to the make-up of the jury until after the return of the verdict constitutes a waiver of the issue on appeal. Accord *Atkins v. Martin*, 229 Ga. 815 (3) (194 SE2d 463) (1972)." *Vaughn v. State*, 173 Ga. App. 716, 717 (3), 718 (327 SE2d 747). In the cases sub judice, defendant's trial attorney failed to challenge the make-up of the jury at the trial on the charges that defendant committed two counts of forgery in the first degree. In fact, the voir dire transcripts reveal that defendant's trial

attorney accepted six jurors for service at the second trial who had already been selected to serve at the first trial without first exhausting peremptory strikes. Further, defendant's appellate attorney neither contends on appeal nor did he contend at the hearing concerning the issue of ineffective assistance of counsel that defendant's trial counsel acted ineffectively by failing to challenge the unique procedure of consecutively selecting two juries from the same panel for separate trials and by failing to challenge the make-up of the jury at the trial on the charges that defendant committed two counts of forgery in the first degree. Nonetheless, defendant expanded the issues asserted by his court-appointed appellate counsel at the ineffective assistance of counsel hearing by testifying that he did not receive a fair trial because he was required to either give up his right to a speedy trial or face a tainted panel and possibly a tainted jury at trial on the indictment charging him with two counts of forgery in the first degree. Defendant further testified that the second trial was not a fair trial because the jurors that served at both trials believed him to be a liar as is evidenced by their finding that he is guilty of aggravated assault upon a peace officer and felony obstruction of an officer. Under these circumstances, we cannot overlook the contention that "[t]he trial court erred in allowing the selection of a jury to try the defendant in his forgery case when that jury contained members of the defendant's previous jury on the aggravated assault charge." To say otherwise, ignores the reason these cases were remanded in *Carver v. State*, 198 Ga. App. 676, supra, i.e., for a hearing and appropriate findings concerning the issue of ineffective assistance of counsel. See *Ross v. Kemp*, 260 Ga. 312, 313 (393 SE2d 244).

" ' "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U. S. 157, 160.' *Silber v. United States*, 370 U. S. 717, 718 (82 SC 1287, 8 LE2d 798); accord *Rogers v. United States*, 422 U. S. 35, 41 (95 SC 2091, 45 LE2d 1); *Lamb v. Cramer*, 285 U. S. 217, 222 (52 SC 315, 76 LE2d 715); *United States v. Tenn. &c. R. Co.*, 176 U. S. 242 (20 SC 370, 44 LE 452)." *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482). In the cases sub judice, defendant was entitled to speedy trials under OCGA § 17-7-170 and trials before impartial jurors. *Bullard v. State*, 14 Ga. App. 478, 480 (81 SE 369). However, the trial court gave defendant the alternative to either give up his right to a speedy trial under the indictment charging him with the two counts of forgery in the first degree or risk proceeding to trial on those charges before jurors exposed to evidence against defendant on unrelated serious criminal offenses. These circumstances caused the de-

fendant to make the decision to select two juries from the same panel and then proceed with consecutive trials on separate and unrelated offenses.

"Every person charged with an offense against the laws of this State is, under our constitution, entitled, on demand, to be tried by an impartial jury." *Brown v. State*, 104 Ga. 736 (1), 737 (30 SE 951). "That jurors should be impartial is of the very essence of a fair trial by jury." *Lewis v. State*, 118 Ga. 803, 804 (45 SE 602). In the cases sub judice, six jurors selected to consider charges that defendant committed aggravated assault upon a peace officer and four counts of felony obstruction of an officer were selected to resolve charges that defendant committed two counts of forgery in the first degree.

Presence or participation at a prior trial or a related hearing which involved the defendant does not disqualify a juror where it is shown that the juror has not formed an opinion as to the guilt or innocence of the accused and that the juror will consider only evidence presented at trial. *Bonner v. State*, 180 Ga. App. 239, 240 (2) (348 SE2d 903). In the cases sub judice, the six jurors that served at both trials indicated during separate voir dire hearings that they could act fairly and impartially and that they would consider only evidence presented at the trials. However, their responses were made before defendant was found guilty on two counts of an indictment charging defendant with aggravated assault upon a peace officer and four counts of felony obstruction of an officer. Further, there is no indication that these six jurors held the same unbiased view after they determined that defendant was guilty of aggravated assault upon a peace officer and one count of felony obstruction of an officer. Consequently, there is no way of determining whether any bias injected by evidence supporting defendant's conviction at the first trial was purged by the time defendant was tried on the charges that he committed two counts of forgery in the first degree.

"There can be no doubt that jury service in prior cases can, as a matter of law, lead to such prejudice that service in a later trial would deny the defendant his right to an impartial jury. This can occur when the prior jury service was in the trial of a co-defendant, *United States v. Diaz-Munoz*, 632 F.2d 1330 (5th Cir. 1980); or even when the prior jury service was in the trial of other persons charged with offenses similar to the present defendants. *United States v. Mutchler*, 559 F.2d 955 (5th Cir. 1977). These principles of fairness lead to the conclusion that a defendant may not be tried by the same jury for two *separate* offenses." *United States v. Muller*, 698 F2d 442, 443-444 (1983). However, it has been held that the same jurors may try a defendant on charges of separate accusations if the crimes are based on the same conduct or a series of acts connected together or a series of acts constituting parts of a single scheme or plan. *Whisenhunt v.*

*State*, 156 Ga. App. 583, 586 (10), 587 (275 SE2d 82). See *Dingler v. State*, 233 Ga. 462 (211 SE2d 752).

In the cases sub judice, defendant was charged in one indictment with assaulting a peace officer and obstructing four law enforcement officers. These offenses allegedly occurred on January 5, 1989. The other indictment charged defendant with forging two personalized checks. These offenses allegedly occurred on November 10, 1988. It is apparent from these allegations that the crimes charged in one indictment were separate and distinct from the crimes charged in the other indictment. Further, the records indicate that proof of the crimes charged in one indictment were not dependent of the crimes charged in the other indictment. See *Bullard v. State*, 14 Ga. App. 478, supra. Consequently, since the crimes charged in the separate indictments were not based on the same conduct or a series of acts connected together or a series of acts constituting parts of a single scheme or plan, we cannot say that defendant was fairly tried before an impartial jury on the charges that he committed two counts of forgery in the first degree. See *Douberly v. State*, 184 Ga. 573, 576 (7) (192 SE 223). It follows that Case No. A92A0221 must be reversed and sent back for a new trial.

2. Defendant next contends the trial court erred in denying his motions for discharge and acquittal under both indictments, arguing that the State failed to bring him to trial within 120 days after his demands for speedy trials. This contention is without merit.

OCGA § 17-7-170 provides, in pertinent part, as follows: "(b) If the person is not tried when the demand [for trial] is made or at the next succeeding regular court term thereafter, provided at both court terms there were juries impaneled and qualified to try him, he shall be absolutely discharged and acquitted of the offense charged in the indictment or accusation." This Code section does not require a defendant to be tried within 120 days of the filing of a demand for trial. In the cases sub judice, it is undisputed that defendant was tried at the term of court following the filings of his demands for trials.

3. Defendant contends the trial court erred "in charging the jury that they could consider the interest of [defendant] in weighing the credibility of [defendant] without charging similarly as to other witnesses." This contention is not supported by the records.

In both trials, the trial court charged that "in determining the degree of credibility that shall be accorded [defendant's] testimony you have the right to take into consideration the fact that [defendant] is interested in the result of the prosecution." The trial court also charged during both trials that "[i]n passing upon the credibility of the witnesses you may [consider] the witnesses'. . . interest or lack of interest in the case. . . ." These were appropriate instructions. *Blair v. State*, 144 Ga. App. 118, 119 (4) (240 SE2d 319).

4. In his final enumeration, defendant contends the trial court erred in determining that he did not receive ineffective assistance from his trial attorney.

"In determining whether the defendant has established that counsel's performance was constitutionally deficient, the court should keep in mind that 'counsel's function . . . is to make the adversarial testing process work in the particular case.' [*Strickland v. Washington,* 466 U. S. 668, 690 (104 SC 2052, 80 LE2d 674).] '(C)ounsel has a duty to make reasonable investigations.' Id. at 691. [However], the defendant must 'overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."' Id. at 689, citing *Michel v. Louisiana,* 350 U. S. 91, 101 (76 SC 158, 164, 100 LE 83) (1955)." *Jowers v. State,* 260 Ga. 459, 461 (2), 462 (396 SE2d 891).

In the cases sub judice, defendant argues that his trial attorney did not call an eyewitness which would have supported his claim that he struggled with Deputy Leon Brown and other law enforcement officers in self-defense. In this vein, defendant's trial counsel testified that he did not call an eyewitness to the incident which led to the charges that defendant committed aggravated assault of a peace officer and four counts of felony obstruction of an officer because interviews with the eyewitness revealed evidence which would have been detrimental to defendant's claim that he acted in self-defense. The eyewitness' testimony supported this conclusion. We therefore cannot say that omission of the eyewitness testimony was ineffective trial strategy.

Defendant argues that his trial attorney failed to call Joe Daniel Maddox to testify about the violent propensities of Deputy Leon Brown. This argument is not supported by the record. Joe Daniel Maddox testified at the motions for new trials' hearing, but he did not give testimony showing that Deputy Leon Brown was a violent man.

Defendant designates a portion of the transcript wherein he was tried on the two counts of forgery in the first degree and argues that his trial attorney "sat by without objection while the District Attorney elicited copious testimony concerning unrelated and irrelevant violent acts by [defendant]." Since defendant will be retried on the charges that he committed two counts of forgery in the first degree, this argument presents nothing for review.

Defendant finally claims that his attorney should not have attempted to suppress the flashlight defendant allegedly used to beat Deputy Leon Brown. We fail to understand how this tactic constitutes ineffective assistance of counsel. This enumeration is without merit.

*Judgment affirmed in Case No. A91A1881. Sognier, C. J., and*

*Birdsong, P. J., concur. Beasley and Cooper, JJ., concur specially and in the judgment. Carley, P. J., Pope, Andrews and Johnson, JJ., concur in the judgment only. Judgment reversed in Case No. A92A0221. Sognier, C. J., and Birdsong, P. J., concur. Beasley and Cooper, JJ., concur specially and in the judgment. Carley, P. J., Pope, Andrews and Johnson, JJ., dissent.*

BEASLEY, Judge, concurring specially.

I concur in the judgment because, if defendant waived the right to be tried by a jury which did not contain jurors who had just found him guilty of other charges, then he was deprived of effective assistance of counsel. Insofar as that was not urged by appellate counsel, this case fits within that category of "exceptional circumstances" contemplated in *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986), which the majority identifies. An impartial jury is the heart of a fair trial.

I am authorized to state that Judge Cooper joins in this special concurrence.

ANDREWS, Judge, dissenting.

I concur in the disposition of Case No. A91A1881. I disagree with the judgment of reversal in Case No. A92A0221. The record reflects that the claimed error in the jury selection process was waived when trial counsel failed to challenge the poll or otherwise object, and knowingly acquiesced in the process.

On November 13, 1989, a panel of 51 jurors was assembled and sworn for the trial of the two cases pending against the defendant. Voir dire and the selection of 12 jurors and an alternate were first completed in the case charging the defendant with aggravated assault and felony obstruction against police officers. Out of the presence of jurors the trial court then related to defense counsel that, although he did not deem it advisable, unless the defendant was willing to drop his demand for trial so that the second unrelated forgery case could be continued, he would be faced with the prospect of attempting to select a jury for the second trial out of the same panel. The record does not indicate why a second panel would not have been available. After conferring with the defendant, defense counsel responded that he would not drop the demand for speedy trial, and would proceed with choosing the second jury. Thereafter, prior to trial of the first case, a second voir dire was conducted of the entire panel, including those previously selected as jurors for the first case.

In beginning his voir dire for the second jury, defense counsel stated to the panel: "Ladies and gentlemen, a rare occasion when we have two juries in an afternoon or a day, but this is a requirement that this defendant desires to have his cases heard and he has filed a

demand with the Court, and he is saying let me tell my story. This is the reason that we're taking two juries and you have been struck once — some of you have been struck once, others have not. He is wanting to be tried and to do this we have to go back to you a second time." During selection of the second jury, the State exhausted its ten peremptory strikes after seven jurors had been selected. Defense counsel, who at the time had exhausted only 13 of the defendant's 20 peremptory strikes, then accepted without objection the next five consecutive jurors all of whom had previously been selected as members of the first jury. Both the State and the defense accepted the next juror as an alternate, who was also a member of the first jury. Immediately after the second jury was selected, the trial court commented that members of this jury had also been selected for service on the first jury. This comment drew no response from defense counsel.

The first case was thereafter tried on November 13 and 14 with the defendant being found guilty on two counts of the five-count indictment. Immediately prior to the commencement of the second trial on November 15, defense counsel made the following statement to the trial court: "One more point that I would like to make prior to the jury coming in is a bridge between this action and the other proceeding which is also recorded. A bar conference was held wherein the District Attorney and myself were called to you concerning the possible continuation of this action as a proceeding insofar as we would require . . . [interruption in the courtroom]. At that time it was brought to the Court's attention that we would require the restriking of people previously under examination in a second panel which would include members from the first panel and that in fact our jury would include possibly members from the first panel. At that time the Court offered to continue our case until a later term. This was presented and the defendant desired to go forward. We went ahead and struck a jury at that time so that we do have on the second panel members from the first panel. But this was done knowingly and for the purpose of this record insofar as no other transaction concerning this matter would be in the record I make this simply for the edification of the record prior to proceeding forward."

The jurors on the panel for both trials were qualified under their oaths in response to the statutory questions. Defense counsel was not limited in any way in the conduct of his separate voir dire for each jury. Defense counsel asked no questions designed to determine if any jurors were biased as a result of having knowledge of both cases against the defendant. Defense made no challenge to the poll for cause on the ground of bias, made no challenge to the array, and made no motion for continuance, mistrial, or any other objection relating to the jury selection process.

The defendant now enumerates as error on appeal that the trial court allowed the juries to be selected in this fashion. The majority concedes that no complaint was made in the trial court by the defendant, but concludes that reversal is necessary because the defendant was forced by this procedure to accept a biased jury. I do not conclude that the defendant was required to do anything other than exercise the rights accorded him by law in selecting a jury.

Although a defendant has a right to be tried before an impartial jury, where he complains that the jury was biased, he must have taken at least some action in the trial court to register an objection in order to assert error on appeal. *Newby v. State*, 161 Ga. App. 805, 808-810 (288 SE2d 889) (1982); see *Sides v. State*, 213 Ga. 482, 484-485 (99 SE2d 884) (1957) (motion for continuance); *Thrash v. State*, 158 Ga. App. 94 (283 SE2d 611) (1981) (motion for mistrial). After jurors, as in the present case, have been rendered prima facie competent under oath in response to the statutory questions on voir dire, and the defendant "has failed to challenge any individual juror for cause, he is not entitled to a new trial solely on the basis that one or more members of his jury may have been subject to disqualification." *Newby*, supra at 810.

Where the defendant's objection, as here, is based on a claim that members of the panel were biased because of their knowledge of the first case, the proper method to register an objection to such bias is by a challenge to the poll for cause to allow a determination as to whether the jurors had formed an opinion as to the defendant's guilt or innocence. *Crider v. State*, 98 Ga. App. 164, 165 (105 SE2d 506) (1958); *Walls v. State*, 83 Ga. App. 318, 324 (63 SE2d 437) (1951); *Humphries v. State*, 100 Ga. 260, 261-262 (28 SE 25) (1896); *Jenkins v. State*, 92 Ga. 459 (17 SE 966) (1893). "If the panel here objected to contained any jurors who were subject to challenge for cause, the proper method of objecting to such jurors would have been to make challenges to the polls. If the manner of the challenges was good at all it would not set aside the panel, but would be available only by challenges to the polls — to each individual juror by name — for cause." (Punctuation and citations omitted.) *Newby*, supra at 809-810.

"In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence." (Citations and punctuation omitted.) *Chancey v. State*, 256 Ga. 415, 425 (349 SE2d 717) (1986); *Chance v. State*, 172 Ga. App. 299, 301 (322 SE2d 741) (1984) (even though jurors may have knowledge of facts to come before them in the present case, the test remains whether they have formed fixed opinions as to the defendant's guilt). "The conduct of voir dire and decision of whether to strike a juror for cause lies within the sound discretion of the trial court."

*Hughey v. State*, 180 Ga. App. 375, 377 (348 SE2d 901) (1986). The trial court will not be deemed to have abused its discretion in the control of voir dire by failing to give relief not requested. *Roberts v. State*, 259 Ga. 441, 443 (383 SE2d 872) (1989). Error occurs only where a judge without justification overrules a challenge for cause and leaves a biased juror on the panel. *Rucker v. State*, 135 Ga. App. 468, 471 (218 SE2d 146) (1975) (no error where defendant failed to challenge jurors for cause, and most of the panel had been spectators a few days earlier at defendant's previous trial on a separate charge).

"Generally, the failure of a party to raise an objection to the make-up of the jury until after the return of the verdict constitutes a waiver of the issue on appeal." *Vaughn v. State*, 173 Ga. App. 716, 718 (327 SE2d 747) (1985). Where the accused or his counsel has knowledge of the alleged error with respect to jurors' qualifications to serve impartially, and no objection is made in the trial court, the alleged disqualification is deemed waived. *Geiger v. State*, 129 Ga. App. 488, 493 (199 SE2d 861) (1973); *Thomas v. State*, 249 Ga. 339, 340 (290 SE2d 462) (1982); *Green v. Caldwell*, 229 Ga. 650, 652 (193 SE2d 847) (1972); *Clarke v. Grimes*, 223 Ga. 461, 462 (156 SE2d 91) (1967). "[A]n accused cannot sit back and gamble upon the verdict and then, if dissatisfied, complain of the jury's selection process for the first time after he has been convicted." *Young v. State*, 232 Ga. 285, 286 (206 SE2d 439) (1974); *Gilreath v. State*, 247 Ga. 814, 824-825 (279 SE2d 650) (1981).

It is clear from the record in this case that the defendant acquiesced in selecting both juries from the same panel. Not only did defense counsel fail on voir dire to question or challenge the jurors on the issue of bias, but with seven peremptory strikes remaining and the State's strikes exhausted, he voluntarily accepted six consecutive jurors for the second jury, all of whom had just been selected for service on the first jury. Even after the first trial which followed the selection of both juries, the defendant was not without a remedy. He could have moved for a mistrial, or prior to the State presenting evidence in the second trial, the defendant could have challenged the second jury under OCGA § 15-12-167 for bias on the basis that five of its members and the alternate had just heard additional evidence against the defendant in the first trial. The lack of any effort to challenge the jury selection process, and defense counsel's statements on the record, demonstrate there was a waiver of the claimed error.

I share the majority's concern that this case is before us again after being remanded for a hearing on claims that trial counsel was ineffective. The record reflects that the matter of selecting two juries from the same panel was raised at the remand hearing, although trial counsel was not questioned on this issue at the hearing. See *Dawson v. State*, 258 Ga. 380, 381 (369 SE2d 897) (1988) (testimony of trial

counsel not necessary where claim of ineffectiveness is related to matters in the record). The majority quotes at length from the trial court's order denying the claim of ineffectiveness on this issue. Appellate counsel enumerated as error the trial court's determination that the defendant was not denied effective assistance of counsel, then under this enumeration argued virtually every ground of claimed ineffectiveness raised below except the jury selection matter, which appellate counsel completely ignored. Enumeration of error not supported in the brief by citation of authority or argument is deemed abandoned. *Owens v. State*, 192 Ga. App. 335, 342 (384 SE2d 920) (1989); *Boyce v. State*, 184 Ga. App. 578, 580 (362 SE2d 229) (1987); Court of Appeals Rule 15 (c) (2). Even if the jury selection issue were properly before us on a claim of ineffective counsel, the issue would be whether reversible error occurred under the standards of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), rather than the analysis undertaken by the majority.

I am authorized to state that Presiding Judge Carley, Judge Pope and Judge Johnson join in this dissent.

DECIDED MARCH 5, 1992 — ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*W. Dennis Mullis*, for appellant.
*James L. Wiggins, District Attorney, H. Frederick Mullis, Jr., Assistant District Attorney*, for appellee.