S99A1052. SIMMONS v. THE STATE.
(522 SE2d 451)

THOMPSON, Justice.

Sixteen-year-old Michael Edward Simmons was convicted by a jury of malice murder and rape in the death of his seven-year-old

half-sister, Dawn Worth.[1] Finding no reversible error, we affirm.

The body of Dawn Worth was found floating in a lake two-tenths of a mile from her home in the early morning hours of April 24, 1978. Her hands were bound behind her back. There was an irregular and jagged tear to the hymen area, evidence that an object had been introduced into the vagina, and the presence of seminal fluid in the vagina. These injuries were inflicted while the child was alive, but close in time to her death. The cause of death was drowning. The time of death was estimated at approximately 4:00 a.m. on April 21, plus or minus ten hours.

Dawn lived with her parents, Mr. and Ms. Worth, and the defendant, Ms. Worth's son from a previous relationship. She was last seen alive near their home on April 21 at 8:30 a.m., walking in a direction away from school. At that time, she was observed by several neighbors, as well as by a school mate with whom she routinely walked to school. The two children engaged in brief conversation.

At about 9:05 that morning, the school secretary telephoned the victim's mother to inform her that Dawn had not arrived at school. Ms. Worth replied that Dawn was not feeling well and she had sent her back to bed. Ten minutes later, the school secretary received a phone call from Dawn's father, who stated that the defendant had gotten Dawn ready for school and sent her to school at about 8:10 a.m. The secretary informed Mr. Worth that Dawn was not at school. It was then that the child was reported missing.

Police interviewed family members in connection with the investigation. On the day after Dawn's body was retrieved from the lake they interviewed Simmons. He told the officers that he had helped Dawn get dressed on the morning of her disappearance, and after he sent her off to school he walked to a nearby convenience store where he telephoned his friend Craig Piper. He said he spoke to Piper for about 30 minutes and then returned home to learn that Dawn was missing. He left again, met with some friends, and drove around in a friend's car smoking marijuana until he returned home at 2:00 p.m. He denied taking Dawn to the lake area that morning or telling her to meet him there, but admitted going there later that afternoon with

---

[1] The crime occurred on or about April 21, 1978. A two-count indictment was returned on April 24, 1979, charging Simmons with malice murder and rape. Trial commenced on October 15, 1979. On the following day, Simmons was found guilty as charged and sentenced to life imprisonment plus 20 years to run concurrent. Neither an appeal nor a motion for new trial was timely filed. Thereafter, Simmons brought a petition for writ of habeas corpus in which he sought an out-of-time appeal on the basis that he was not advised by trial counsel or the sentencing court of his right to file a motion for new trial or to appeal his conviction. By order entered February 5, 1999, Simmons was granted an out-of-time appeal to be filed within 30 days. His notice of appeal was filed on March 2, 1999. The case was docketed in this Court on April 15, 1999, and submitted for decision on briefs on June 7, 1999.

others to search for her.

The police interviewed Piper who said Simmons called him on April 21 at around 11:00 a.m., not between 8:00 and 9:00 a.m., as Simmons claimed. Piper said Simmons told him that Dawn was missing, that the police would be questioning him, and that he should say their telephone call took place early in the morning. Police also interviewed Piper's sister, Bond, who stated Simmons called and left a message for Piper to "remember the time."

After interviewing Piper and Bond, and learning of inconsistencies in Simmons' statement, the police believed him to be a suspect. Simmons' mother accompanied him to the police station where they both executed a waiver of *Miranda* rights and agreed to another interview. In an oral statement to police, Simmons admitted that he had lied about the time of his telephone call to Piper, and admitted that he had been at the lake area that morning to smoke marijuana, but denied seeing the victim. At that point, Simmons' mother demanded that the interview be terminated.

Simmons' aunt testified that she overheard a conversation between Simmons and his mother in which he stated that he tried to make Dawn go to school that morning, but she followed him to the lake; that while at the lake the two began to play; that he tied her arms behind her back and put her in the water; but that Dawn started crying and he panicked and ran home.

1. The evidence, although circumstantial, was sufficient for a rational trier of fact to have found Simmons guilty of murder and rape beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Simmons asserts he was not given proper *Miranda* warnings because he was not advised of the consequences of his statements.

When Simmons became a suspect, he and his mother came to the police station for further interrogation. Because he was 16 years old at the time, the officers used a juvenile advice of rights form, which was read to him in his mother's presence. The record of the *Jackson v. Denno*[2] hearing reveals that in addition to all other *Miranda* warnings, Simmons was advised as follows: "anything I say can be used against me in court — anything I do say can be repeated to a jury." He was fully informed of the consequences of any custodial statements. The trial court correctly ruled that Simmons' statements were knowing and voluntary and admissible at trial.

3. During the *Jackson v. Denno* hearing, defense counsel advised the court that the State had not produced a copy of Simmons' written statement to police in response to his motion for exculpatory evi-

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

dence. The statement was tendered to defense counsel at the hearing and the court offered to recess the trial if counsel needed additional time. Counsel took some time to review the statement, but no recess was requested.

During trial, Simmons' written statement was read into the record by the interviewing officer. That officer then testified to the contents of Simmons' oral statement taken at the police station. Defense counsel conducted a thorough cross-examination of the witness.

The objection at trial went to the failure to produce exculpatory evidence pursuant to Simmons' request for *Brady*[3] material. The trial court concluded, and we agree, that the defendant's statements did not fall within the purview of *Brady*. But even if they had, Simmons has not met his "burden of showing that evidence was withheld, and 'that the evidence withheld from him so impaired his defense that he was denied a fair trial within the meaning of the *Brady* Rule.' [Cit.]" *Dennis v. State*, 263 Ga. 257, 259 (5) (430 SE2d 742) (1993). Also, *Brady* is not violated when the evidence is presented at trial. Id.

We note that under the current discovery statute codified at OCGA § 17-16-4 (a) (1), enacted long after Simmons' 1979 trial, failure on the part of the State to disclose a defendant's statements prior to trial may prohibit the State from introducing the evidence. However, this sanction applies only where there has been a showing of prejudice to the defendant and bad faith on the part of the State. *Felder v. State*, 270 Ga. 641 (6) (514 SE2d 416) (1999); *Bell v. State*, 224 Ga. App. 191 (480 SE2d 241) (1997). Simmons has demonstrated neither.

4. Simmons raises several evidentiary challenges.

(a) During cross-examination of the State's pathologist, defense counsel inquired about the amount of blood found in the victim's vagina during autopsy. The expert testified that he found the equivalent of about one teaspoon in the vagina, but then stated, "I only have an opinion that probably not more than twice that amount may have been produced by these injuries." Defense counsel then inquired, "do you have any opinion as to what happened to the other teaspoonful?" The pathologist responded, "In my opinion the child had been raped. The panties were off." At that point, defense counsel interrupted with an objection that the answer was nonresponsive to his question. The court noted that the witness had given his *opinion* in response to the question asked, and allowed the witness to complete his answer. The expert continued, "The panties were off during the rape. The blood was wiped away, and the panties were replaced

---

[3] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

by the assailant."

On appeal, Simmons asserts that the testimony constituted an opinion of ultimate fact which invaded the province of the jury. See generally *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981). However, "[w]here counsel elicits testimony unfavorable to his client, he will not be heard to object to it, no matter how prejudicial it may be, if it is a direct and pertinent response to the question propounded." *Mosely v. State*, 269 Ga. 17, 21 (4) (495 SE2d 9) (1998). When taken in its entirety, the pathologist's answer was directly responsive to defense counsel's inquiry. See generally *Eiland v. State*, 246 Ga. 112 (3) (268 SE2d 922) (1980) (completed answer is considered in determining whether answer was responsive or nonresponsive). We find no error.

(b) Defense counsel elicited a prejudicial response on cross-examination of the investigating officer when he asked why the officer did not tape record Simmons' custodial statement. The officer replied, "[Simmons'] mother called us . . . at the detective office and stated Michael wanted to . . . wanted to give us a statement admitting that he was the one that killed her, and I didn't think I needed a tape recorder because he was going to give me a signed statement." Defense counsel objected to the answer as nonresponsive. The court correctly overruled the objection, ruling that the answer was directly responsive to the question. *Mosely*, supra. There was no error.

(c) Over a hearsay objection, the trial court allowed Dawn's school companion to testify that when she encountered Dawn on the morning of April 21, Dawn said she was "going to her brother to take her to school." Assuming that it was error to admit the statement, the error is harmless where other competent evidence is available as to the same fact. *Felder v. State*, supra at (8); *Bryant v. State*, 270 Ga. 266, 270, n. 9 (507 SE2d 451) (1998). Evidence of Simmons' own admission that he had left the victim in the lake with her hands tied together was much more inculpatory than the hearsay testimony. "In such a case, the hearsay is cumulative and without material effect on the verdict." *Felder*, supra at 646.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 18, 1999.

*Zell & Zell, Rodney S. Zell*, for appellant.

*J. Gray Conger, District Attorney, Margaret E. Bagley, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jeanne K. Strickland, Assistant Attorney General*, for appellee.