## A01A2223. THOMAS v. THE STATE.
### (561 SE2d 444)

PHIPPS, Judge.

Gilbert Thomas was charged in one indictment with making terroristic threats and burglary and, in a separate indictment, with theft by taking. The cases were tried together, and a jury found him guilty on all charges. On appeal, he claims that the evidence was insufficient to support the verdicts and that the trial court erred by denying his motion to sever the indictments, by prohibiting his counsel from using prior criminal convictions to impeach a witness and by admitting hearsay. Thomas also claims that his counsel was ineffective because he kept Thomas from testifying in his own defense and because he failed to introduce evidence in mitigation of sentencing. We find that the evidence was sufficient to support the verdicts and find no merit in Thomas's remaining claims. Thus, we affirm.

1. Thomas challenges the sufficiency of the evidence to support his convictions. On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict.[1] We do not weigh the evidence or determine witness credibility, but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[2] Under *Jackson v. Virginia*,[3] we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

The owner of Airport Taxi Service testified that on March 17, 1999, one of his blue and white taxis with "Southside Taxi" written on the side was not returned after the driver's shift. Over a hearsay objection, he testified that he received a call from Thomas's sister-in-law, who informed him that Thomas was driving the taxi. When he reported the stolen taxi to the police, he gave them the sister-in-law's name and telephone number. He testified that he knew Thomas but had not given him permission to use the taxi.

The State introduced a written statement given by Thomas's sister-in-law to Bulloch County Investigator Deal in which she stated that Thomas drove into her yard at 7:30 a.m. on March 17 in a taxi with the same markings as the taxi missing from Airport Taxi Service. In response, Thomas introduced a written statement in which his sister-in-law said that Deal had coerced her into writing the prior statement.[4] Deal testified at trial and denied using coercion or force to obtain the statement. One of Thomas's friends also testified that Thomas drove to his house in a taxi on the morning of March 17.

Cathy Collins testified that she had known Thomas for about six years and that Thomas and his girlfriend, Katina Weaver, had lived with her in the past. She testified that sometime between 11:00 and 12:00 on the evening of March 17, Thomas "snatched" her locked door open, came in and started yelling for Weaver. At the time, Collins was sleeping in the bedroom with her four children and a friend, Jimmy Collins, was sleeping on the living room couch. When Collins responded that she did not know where Weaver was, Thomas threatened to "beat her ass." As she reached for the telephone, he grabbed it and pulled it out of the wall. Thomas continued to use profanity and woke up Collins's children, who began crying. After Thomas left, Collins saw a blue and white taxi driving away from her house. She testified that she had not invited Thomas to her house that evening.

---

[1] *Newman v. State*, 233 Ga. App. 794 (1) (504 SE2d 476) (1998).

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Newman*, supra.

[3] Supra.

[4] The parties stipulated to the admission of both statements without Thomas's sister-in-law's testimony.

Jimmy Collins testified that he spent the night at Cathy Collins's house because he had consumed too much alcohol. He said that he was awakened at about 1:00 or 2:00 a.m. on March 18 when the "front door came flinging open" and Thomas walked in and asked for Weaver. When he and Cathy Collins told Thomas that Weaver was not there, Thomas told Cathy Collins "I'll get you" or words to that effect.

Thomas argues that the evidence presented was a "sui generis hodgepodge of ipse dixits." Peculiar or not, we find that the evidence was sufficient for the jury to find beyond a reasonable doubt each of the essential elements of the crimes for which Thomas was convicted.

Theft by taking is the unlawful taking of any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken.[5] The testimony of the taxicab owner and of Thomas's friend and the statement by his sister-in-law to the police provided sufficient evidence to prove this offense. The credibility of the statements made by Thomas's sister-in-law was for the jury to determine, and it chose to believe her statement to the police.[6]

A person commits burglary when, without authority and with the intent to commit a felony therein, he enters or remains within the dwelling house of another.[7] A terroristic threat is a threat to commit any crime of violence with the purpose of terrorizing another or in reckless disregard of the risk of causing such terror.[8] No person shall be convicted of making a terroristic threat on the uncorroborated testimony of the threatened party.[9]

Here, the testimony of Cathy Collins and Jimmy Collins was sufficient to establish that Thomas entered Cathy Collins's house without permission with the intent to commit a felony, making a terroristic threat, and that he actually made such a threat. The corroboration necessary to convict for making a terroristic threat "need only be that amount of independent evidence which tends to prove that the incident occurred as alleged."[10] If there is any evidence of corroboration, we will not go behind the jury verdict and rule on its probative value.[11] Jimmy Collins's testimony provided sufficient cor-

---

[5] OCGA § 16-8-2.

[6] See generally *Havron v. State*, 234 Ga. App. 413, 414 (1) (506 SE2d 421) (1998) (witness credibility is for the jury to determine).

[7] OCGA § 16-7-1.

[8] OCGA § 16-11-37 (a).

[9] Id.

[10] (Citations and punctuation omitted.) *Scott v. State*, 225 Ga. App. 729, 732 (3) (484 SE2d 780) (1997).

[11] Id.

roboration for a rational trier of fact to find Thomas guilty beyond a reasonable doubt of making terroristic threats to Cathy Collins.[12]

2. Thomas claims that the trial court erred by denying his motion to sever the indictments.

A trial court has discretion to conduct a joint trial on two separate indictments "[w]here the joinder is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan."[13] The underlying consideration in this situation is "whether undue or great risk of prejudice from a joint disposition of charges would result."[14]

Here, the evidence showed a series of acts connected together — Thomas took the taxi early on the morning of March 17 and used it that evening to drive to Cathy Collins's house, where he committed the burglary and made the terroristic threats. We find that the trial court did not abuse its discretion by denying Thomas's motion to sever.[15]

3. Thomas contends that the trial court erred by refusing to allow him to impeach Cathy Collins with certified copies of her prior convictions.

The issue arose because the State filed a motion in limine seeking to preclude Thomas from mentioning or soliciting from a witness the fact that any witness had been accused or convicted of a crime until a properly certified copy of the conviction was admitted into evidence to impeach the witness. Thomas's counsel informed the court that he had certified copies of two prior convictions of Cathy Collins. The trial court granted the State's motion, but did not rule on whether the certified copies would be admissible. Instead, the court instructed Thomas's counsel to approach the bench when he wanted to introduce the convictions and said that it would address their admissibility at that time.

Thomas sought permission from the court to address Cathy Collins's character during his opening argument. He did not, however, seek to introduce the prior convictions or request that the trial court rule on their admissibility. Thus, we have nothing to review on this claim.[16]

4. Thomas claims that the trial court erred by admitting the hearsay statement of the Airport Taxi Service owner regarding his receipt of a call from Thomas's sister-in-law about the missing cab.

---

[12] See id.

[13] (Citations and punctuation omitted.) *Smith v. State*, 199 Ga. App. 410 (2) (405 SE2d 107) (1991).

[14] (Citation and punctuation omitted.) Id.

[15] Cf. *Carver v. State*, 203 Ga. App. 197, 204 (1) (416 SE2d 810) (1992).

[16] See *Sales v. State*, 199 Ga. App. 791, 792 (2) (406 SE2d 131) (1991) (where trial court is not asked to rule on admissibility of evidence, there is nothing to review).

"Assuming that it was error to admit the statement, the error is harmless where other competent evidence is available as to the same fact."[17] The hearsay was cumulative of the written statement that Thomas's sister-in-law gave to the police and did not affect the verdict.[18]

5. Thomas filed a motion for new trial, claiming that his counsel was ineffective in numerous respects. After conducting a hearing, the trial court denied his motion. On appeal, Thomas raises only two ineffectiveness claims — his counsel refused to allow him to testify at trial and failed to introduce evidence to mitigate his sentence.

To establish ineffectiveness of trial counsel, Thomas must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[19] The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[20] The test for reasonable attorney performance is " 'whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .' "[21] We review a trial court's finding that a defendant has been afforded effective assistance of counsel under the clearly erroneous standard.[22]

(a) At the motion for new trial hearing, Thomas testified that he had told his trial counsel repeatedly that he wanted to testify and that his counsel had strongly advised him against it. Trial counsel testified that he had told Thomas that he had the right to testify and that Thomas had told him he did not want to testify. He denied ever discouraging Thomas from testifying.

Although a criminal defendant has a constitutional right to testify in his own defense, the decision whether to testify is considered to be a tactical one to be made by the defendant after consultation with his counsel.[23] Based on the testimony at the motion for new trial hearing, the trial court was authorized to conclude that Thomas was not denied his right to testify and was therefore not denied effective assistance of counsel.[24]

(b) Thomas testified at the motion for new trial hearing that he had positive life experiences, such as holding one job for fourteen years, being married previously and having two children, one of

---

[17] *Simmons v. State*, 271 Ga. 563, 567 (4) (c) (522 SE2d 451) (1999).
[18] Id.
[19] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).
[20] Id. at 687-689.
[21] (Citations omitted.) *Stansell v. State*, 270 Ga. 147, 150 (2) (510 SE2d 292) (1998).
[22] *Whitner v. State*, 202 Ga. App. 608, 609 (415 SE2d 52) (1992).
[23] *Barron v. State*, 264 Ga. 865, 866 (2) (452 SE2d 504) (1995).
[24] Id.; see *Lovelace v. State*, 241 Ga. App. 774, 776 (3) (a) (527 SE2d 878) (2000).

whom had graduated from college. He had wanted to introduce this evidence in mitigation of his sentence, but his trial counsel had told him that the information was immaterial. Trial counsel testified that he had introduced the limited information he was given in an attempt to mitigate Thomas's sentence. He said that he had obtained conflicting evidence about Thomas's employment, living arrangements and other matters. Counsel recalled that Thomas was living behind a building, that he had five children who were living with his mother, that he had worked on a shrimp boat and that he was a mechanic, but that he was unemployed most of the time counsel represented him. Counsel also testified that while he was presenting argument in mitigation of sentencing, including the fact that Thomas had five children who would be harmed if he was sentenced to a lengthy term, Thomas interrupted him, as he had done throughout the trial.

In aggravation of punishment, the State introduced certified copies of prior convictions for armed robbery and robbery. The State also asked the court to consider Thomas's conduct during trial, including the fact that he continually made loud comments during witness examinations and closing arguments in an attempt to disrupt the proceedings and to testify without taking the stand.

Although Thomas testified that his counsel could have presented evidence of a stable work history and successful parenting, his counsel had arguably conflicting evidence on those same issues. And Thomas failed to show how any such mitigating evidence would have changed the sentence entered by the trial court. "Thus, he has failed to carry his burden of showing that he was prejudiced by trial counsel's performance."[25]

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 26, 2002 —
RECONSIDERATION DENIED MARCH 13, 2002.

*Thomas J. Gustinella*, for appellant.

*Spencer Lawton, Jr., District Attorney, Ronald M. Adams, Assistant District Attorney*, for appellee.

---

[25] (Citations omitted.) *Pace v. State*, 239 Ga. App. 506, 510 (7) (521 SE2d 444) (1999).