## A03A2163. McCLENDON v. THE STATE.
(590 SE2d 189)

ELLINGTON, Judge.

A Lamar County jury found David McClendon guilty of making false statements, OCGA § 16-10-20; criminal interference with government property, OCGA § 16-7-24; tampering with evidence, OCGA § 16-10-94; and theft by taking, OCGA § 16-8-2. Pursuant to a granted out-of-time appeal, McClendon contends the trial court erred in admitting an inculpatory statement into evidence and he challenges the sufficiency of the evidence supporting his convictions. Finding no error, we affirm.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

---

[7] See generally *Young v. State*, 269 Ga. 490, 492-493 (2) (500 SE2d 583) (1998).

Shortly after 2:00 a.m. on October 16, 1998, McClendon, a Milner, Georgia, uniformed police officer, made a 911 call reporting that he had been shot by Bradley Kimbrough. McClendon said he returned fire, but Kimbrough escaped. The shooting occurred in Milner City Hall and caused damage to the property. McClendon, who was wearing a bulletproof vest, was not seriously injured. However, a wound to his left hand required medical treatment, so his brother-in-law drove him to the hospital.

Agents and crime scene specialists with the Georgia Bureau of Investigation responded to the shooting. They recovered McClendon's vest, his 9mm semi-automatic pistol, and several shell casings and bullets, and began analyzing the evidence — primarily blood splatter and projected bullet trajectories. The local police canvassed the neighborhood for many hours, but were unable to locate the weapon Kimbrough allegedly used. Shortly after the shooting, police arrested Kimbrough in his home. Kimbrough consistently denied shooting McClendon, asserting he was home alone at the time. The police searched Kimbrough's residence, but failed to find any evidence linking him to the crime. The GBI found no gunpowder residue on his hands or any of McClendon's blood on his clothing.

Very soon into their investigation, the GBI agents discovered the crime scene evidence was inconsistent with what they had been told about the shooting. The agents reinterviewed McClendon and had him walk through the crime scene, explaining what happened as they videotaped him. McClendon's story, however, still did not fit the evidence. For example, McClendon said Kimbrough fired at him four or five times, yet only three of the shooter's bullets were recovered. McClendon's blood splatter and return-fire bullet trajectories strongly suggested he was standing in a place and position other than where he indicated in his videotaped statement. The place Kimbrough allegedly stood when he shot at McClendon was, at the time of the shooting, so dark it would have been impossible for McClendon to identify him. The trajectory of the bullet through McClendon's hand was inconsistent with a defensive injury. The bullets Kimbrough allegedly fired at McClendon were of a low velocity, low penetration, .22 caliber variety. The bullet holes in McClendon's vest and shirt were surrounded by gunpowder residue indicative of shots fired while the muzzle of the gun was pressed in contact with them. And, finally, McClendon's hand had a bruise from what appeared to be a revolver's barrel cylinder gap, and the bruise was positioned such that the weapon had to be turned toward McClendon when it was fired. Based on this evidence, the GBI crime scene specialists opined that McClendon's wounds were all self-inflicted.

Shortly after the GBI came to this conclusion, McClendon's brother-in-law told investigators that, on their way to the hospital,

McClendon discarded something in a field beside the road. McClendon claimed he threw away pain pills for which he had no prescription. A search of the field, however, revealed a small, five-shot, single-action .22 caliber Derringer revolver containing two live rounds and three spent shell casings. Bullets test-fired from the pistol matched those found at the crime scene. The GBI traced the pistol to a man that McClendon had arrested a year earlier for DUI. An evidence receipt established that McClendon took the weapon from its owner for safekeeping pending the disposition of the DUI. McClendon lacked authority or permission to remove the pistol from police custody and dispose of it.

When it was apparent the police would trace the revolver to him, McClendon invited his police chief to his home to talk. McClendon told the chief that he did not shoot himself. However, he admitted planting the gun at Kimbrough's house in the hopes that he could arrest Kimbrough for possessing it. He also said he picked up the gun after Kimbrough shot him with it and disposed of it. McClendon believed that Kimbrough, who threatened neighbors, kept dead animals in mason jars, and liked to throw knives into his walls, was a threat to the community. Consequently, as he later explained to a GBI agent, he felt it was his duty to "do whatever was necessary, to include fabricating or planting evidence, to get [Kimbrough] off the streets." In his statement to the GBI and the district attorney, McClendon admitted he took the gun from a DUI suspect, that he planted it at Kimbrough's house, and that after the shooting he removed it from the crime scene and discarded it in a field. McClendon continued to insist, however, that Kimbrough actually shot him.

1. McClendon contends the trial court erred in allowing the statements he made to the chief of police to be admitted against him because the chief did not give him *Miranda*[1] warnings before their conversation began. The record reveals that McClendon invited the chief to his home. The chief is a family friend; his brother is married to McClendon's sister. The chief did not go there with the intention of making an arrest. In fact, no indictment had been returned or warrant issued for McClendon's arrest. There is no evidence McClendon was in custody. Further, the chief did not question McClendon; rather, McClendon volunteered an explanation for why he had possessed the weapon with which he was shot. Under these circumstances, the trial court's finding that the noncustodial statement was voluntary was not clearly erroneous. See *Hardeman v. State*, 252 Ga. 286, 288 (1) (313 SE2d 95) (1984).

---

[1] *Miranda v. Arizona*, 384 U. S. 436, 444 (86 SC 1602, 16 LE2d 694) (1966).

2. Although McClendon enumerates as error the general grounds, he attacks the sufficiency of the evidence only as it pertains to his convictions for theft by taking and interference with government property. Consequently, any challenge to the sufficiency of the evidence with regard to his remaining convictions is deemed abandoned. Court of Appeals Rule 27 (c) (2).

(a) "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." OCGA § 16-8-2. McClendon admitted removing the gun from police custody and disposing of it in a field. He lacked permission or authority to take and dispose of the property, which was being held in safekeeping for its owner. This evidence was sufficient to support McClendon's conviction of theft by taking beyond a reasonable doubt. *McIlhenny v. State*, 172 Ga. App. 419, 420 (1) (323 SE2d 280) (1984).

(b) McClendon contends his conviction for interference with government property must be reversed because the State failed to prove the Milner City Hall was owned by an active municipal corporation recognized by the State of Georgia.

"A person commits the offense of interference with government property when he destroys, damages, or defaces government property." OCGA § 16-7-24 (a). Although that Code section requires proof that the property was owned by a government, that fact may be established by circumstantial evidence. *Dickerson v. State*, 180 Ga. App. 852, 853 (350 SE2d 835) (1986); *Fields v. State*, 167 Ga. App. 400, 401 (2) (306 SE2d 695) (1983). In this case, several officials employed by the City of Milner testified that McClendon's gunfire damaged the windows and walls inside the Milner City Hall, which was at the time housing an active police department. Further, the chief of police testified that the Milner City Hall building is owned by the City of Milner. This evidence is sufficient to establish beyond a reasonable doubt that the damaged property was owned by an active governmental entity. We find no error.

*Judgment affirmed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 14, 2003.

*Bush & Smith, Wilson H. Bush*, for appellant.

*Richard G. Milam, District Attorney, Paul E. Hemmann, Assistant District Attorney*, for appellee.