S07A0261. WALKER v. JOHNSON.
(646 SE2d 44)

THOMPSON, Justice.

A jury found Kevin Johnson guilty of armed robbery, kidnapping with bodily injury, aggravated assault, burglary, and possession of a firearm during the commission of a felony. He was sentenced to life in prison plus five years. The Court of Appeals affirmed his convictions and sentence. *Johnson v. State*, 255 Ga. App. 721 (566 SE2d 440) (2002). Johnson filed a petition for a writ of habeas corpus on December 3, 2003, and a hearing was held in April 2005 at which the habeas court received documentary evidence as well as the deposition testimony of Johnson's trial and appellate counsel. On August 31, 2006, the habeas court granted relief to Johnson based on its finding that, inter alia, the State had suppressed evidence favorable to Johnson in violation of *Brady v. Maryland*, 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1963). The warden, Victor Walker, appealed, and we affirm the vacation of Johnson's convictions due to the *Brady* error.

---

1. Johnson's *Brady* claim is based upon the State's failure to produce to the defense audiotapes containing exculpatory witness statements and Johnson's own statement to police during investigation of the crimes. This claim is not procedurally defaulted because Johnson has shown cause and prejudice to excuse the default. OCGA § 9-14-48 (d). Neither Johnson nor his counsel was aware of the tapes as a result of the State's failure to provide them in discovery, and the tapes were obtained only after the denial of Johnson's direct appeal when Johnson's father filed an Open Records Request. See OCGA § 50-18-72 (a) (4). As for the required showing of prejudice, Johnson's underlying claim is a constitutional claim involving the denial of his Fourteenth Amendment due process rights. Thus, "the underlying claim and the prejudice analysis necessary to satisfy the cause-and-prejudice test are coextensive." *Schofield v. Palmer*, 279 Ga. 848, 851 (621 SE2d 726) (2005).

2. Finding no procedural bar to Johnson's claim, we turn to the merits. The United States Supreme Court ruled in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, supra, 373 U. S. at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U. S. 667, 682 (105 SC 3375, 87 LE2d 481) (1985). To succeed on his *Brady* claim, Johnson thus was required to show: (1) the State possessed evidence favorable to his defense; (2) he did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the trial would have been different. *Schofield*, supra, 279 Ga. at 852 (2).

We agree with the habeas court's finding that the first three parts of Johnson's *Brady* claim were easily met. The State possessed Johnson's taped statement, as well as the taped statements of victims Joseph Morris and Kenyatta Munford, all of which were made during interviews with Detective Revelle following the crimes and contained evidence favorable to the defense. It is uncontroverted that neither Johnson nor his counsel received copies of the tapes or transcripts of the statements despite both Johnson's election to participate in reciprocal discovery under OCGA § 17-16-1 et seq. and his discovery request for the State to produce Johnson's statements and all witness statements. The remaining question is whether there is a reasonable probability that the result of the trial would have been different had these materials been disclosed.

A review of the transcript of Munford's statement reveals that she told Detective Revelle she believed the crimes were set up by victim Morris as part of a plan to recover insurance monies and that her belief was based on the fact Morris said he knew the perpetrators and had been with them earlier in the day; Morris knew they were taking his car to a particular location; the perpetrators were familiar with the interior of Morris' trailer and knew exactly where the safe containing cash was kept; the perpetrators were only interested in taking certain items from Morris and did not want Munford's valuables; and Morris was not going to call police. Munford also stated that Morris lied when he told police he could not locate her after the crimes, thereby interfering with the State's attempts to obtain her statement. A comparison of Morris' and Munford's statements reveals that Munford's description of events during the crimes contradicted Morris' statement in several significant respects.

While the jury would have been free to reject Munford's belief that Morris staged the crimes, her statement would have served as useful impeachment evidence with which to attack the credibility of Morris' testimony and would have provided strong evidence that, in an effort to avoid disclosure of his fraudulent scheme, Morris had a motive to lie. See *Bagley*, supra, 473 U. S. at 676 (evidence whose disclosure is required under *Brady* includes impeachment evidence). The inconsistencies in Morris' statement similarly would have assisted the defense in challenging Morris' testimony. We find it is thus reasonably probable that, in the hands of skillful defense counsel, the undisclosed statements would have had a negative impact on the jury's willingness to rely on Morris' testimony as the only witness who identified Johnson. See *Giglio v. United States*, 405 U. S. 150, 154-155 (92 SC 763, 31 LE2d 104) (1972) (*Brady* violation found where government failed to disclose promise not to prosecute cooperating witness on whom government's case "almost entirely" depended); *United States v. Petrillo*, 821 F2d 85, 90 (2d Cir. 1987) (impeachment evidence generally material where witness supplied the only evidence linking defendant to the crime).

We reject the State's argument that it complied with its constitutional duties by producing investigative case notes containing a one paragraph reference to Munford's 48-page statement.[1] These notes

---

[1] The investigative case notes provided:
    At approximately 1715 hrs., I interviewed Victim Munford at the Garden City Police Dept. in the presence of her mother and aunt. The interview was audiotaped with Munford's knowledge. Munford did not like being involved in this investigation and was not very cooperative. She did answer my questions and verified that two black males had held her and Morris at gunpoint, forced Morris to open his residence, robbed him of money and a gold chain, struck him in the head, and stole

omitted much of the potentially exculpatory material contained in the complete transcript and incorrectly reported that Munford offered no justification for her belief that no crimes occurred. Rather than informing the defense of the substantive nature of Munford's statement, there is a significant likelihood that the State's incomplete and inaccurate response to Johnson's discovery and *Brady* motions induced defense counsel to believe either that the taped statements were not in existence or that they contained no information beneficial to the defense. As stated by Justice Blackmun in *Bagley*,

> an incomplete response to a specific [*Brady*] request not only deprives the defense of certain evidence, but also has the effect of representing to the defense that the evidence does not exist. In reliance on this misleading representation, the defense might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued. [Cit.]

> We agree that the prosecutor's failure to respond fully to a *Brady* request may impair the adversary process in this manner. And the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption.

*Bagley*, supra, 473 U. S. at 682-683 (plurality opinion of Blackmun, J.).

With respect to Johnson's own statement, the transcript of that statement makes clear that Johnson told Revelle he was at his mother's house at the time of the crimes and that he identified several family members and friends who would testify as to his whereabouts. At trial, however, Revelle told the jury that Johnson failed to provide police with the name of any potential alibi witness. The State's failure to produce Johnson's statement thus provided the State with the opportunity to argue strenuously and virtually without contradiction

---

his vehicle. She could not recognize any of the individuals in the four photo line-up sheets and stated that she had not seen either of their faces once she had been ordered not to look at them and keep her head down. She also related that she believed that Morris had arranged with the two black males to steal his car for insurance money. I asked her why she believed that and she could give no answer. She also opined that Morris had been with the two suspects earlier in the day but could not give a reason for thinking so.

that Johnson did not tell police about any alibi witness but simply fabricated the defense prior to trial. While an accused's statements to law enforcement generally are not *Brady* material, *Lobdell v. State*, 256 Ga. 769 (5) (353 SE2d 799) (1987), Johnson's statement could have been used to demonstrate the State's knowledge that Johnson provided names of potential alibi witnesses to Revelle, thereby impeaching Revelle's contrary trial testimony and confirming Johnson's allegation that he gave this information to police. See *Waldrip v. Head*, 279 Ga. 826, 828 (II) (A) (620 SE2d 829) (2005) ("It is one thing to say the State has no constitutional duty to remind a defendant of his or her own pretrial allegations of fact contained in his or her own statement to law enforcement officers, but it would be another case altogether if the State failed to disclose evidence confirming the defendant's allegations.").

In light of the totality of the circumstances in this case, we find the State's suppression of the three statements at issue was more than sufficient to place in doubt the outcome of the trial. The State knew its case was based almost entirely on the credibility of Morris' testimony. At the same time, Johnson's defense rested on his ability to challenge both Morris' credibility and the thoroughness of the State's investigation. The failure to produce the statements made the State's case "much stronger, and the defense case much weaker, than the full facts would have suggested." *Kyles v. Whitley*, 514 U. S. 419, 429 (115 SC 1555, 131 LE2d 490) (1995). Accordingly, we agree with the court that in the absence of the withheld evidence, the trial did not produce a verdict worthy of confidence and Johnson was entitled to a writ of habeas corpus.

3. Because Johnson has prevailed on his *Brady* claim, the warden's remaining enumerations of error are moot.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 14, 2007 —
RECONSIDERATION DENIED JUNE 25, 2007.

*Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Chad E. Jacobs, Assistant Attorney General*, for appellant.

*Jackson & Schiavone, George R. Schiavone*, for appellee.