A11A0875, A11A0876. JACKSON v. THE STATE (two cases).
A11A0877. PHILLIPS v. THE STATE.
(714 SE2d 584)

MCFADDEN, Judge.

A jury found brothers Silas Jackson and Michael Phillips guilty of two counts each of armed robbery, criminal attempt to commit armed robbery, aggravated assault, and possession of a firearm during the commission of a crime, and one count of theft by receiving stolen property. Based on a separate indictment, the jury also found Jackson guilty of two additional counts of aggravated assault.

Citing an error in the jury instructions, the trial court granted

both defendants a new trial as to several charges. These appeals represent the defendants' challenge to their convictions on the remaining charges. In Case Nos. A11A0875 and A11A0876, Jackson argues that the trial court erred in joining the two indictments for trial. He also asserts, without any supporting argument or authority, that the evidence against him was insufficient and that the trial court erred in admitting identification testimony. In Case No. A11A0877, Phillips claims, among other things, that the evidence was insufficient to sustain his convictions and that the trial court improperly restricted his use of a photograph at trial. He also argues that the State failed to produce a written witness statement in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

Because the trial court did not err in joining the two indictments for trial and Jackson has abandoned his other claims of error, we affirm Jackson's convictions. As to Phillips, however, we find that the State committed a harmful *Brady* violation and that the trial court erred with respect to the photograph. Accordingly, although the evidence against him was sufficient, we reverse Phillips's convictions and remand for a new trial. All other claims of error raised by Phillips are mooted by the grant of a new trial.

Viewed favorably to the jury's verdicts, the evidence shows that around 2:00 a.m. on November 18, 2005, Robert Proctor arrived at his Albany home in a tan Lincoln Towncar. As Proctor walked toward his house, two masked men approached him. One of the men pointed a gun and ordered Proctor to empty his pockets. The men took Proctor's money and car keys, then left in his Towncar.

At approximately 8:00 that evening, two gunmen wearing bandanas over their faces confronted Jermond Pollard and his mother-in-law in the driveway of Pollard's home in Albany. Threatening to shoot, the men demanded money and took the mother-in-law's purse. Pollard, who had no money with him, ran. In an alley behind his house, Pollard saw a tan Lincoln Towncar moving slowly. He knocked on the car window for help, then noticed that the driver was wearing a bandana like those of the gunmen, who arrived a few seconds later, got into the vehicle, and left. Although the robbers' faces were partially covered, Pollard was "pretty positive" at trial that Jackson was one of the gunmen and Phillips was the driver of the Towncar.

A few minutes after the Pollard incident, and less than one-half mile away, Michael Flynn and his family drove up to their home. As the Flynns got out of the car, three armed men with bandanas over their faces ran up and demanded money. One man pointed a gun at Michael Flynn, who handed over his wallet. The men then fled. A few moments later, Flynn noticed a gold Lincoln Towncar speeding down

the street with its lights off, and Flynn's son saw the gunmen enter the car.

At a family gathering the following day, Jackson pointed a gun at his cousin and the cousin's friend, then left the area. A family member called the police, who arrived within a few minutes. A short time later, Jackson reappeared and spoke with the officers. The cousin testified that before the assaults, he saw Jackson standing by the same type of tan Lincoln Towncar that was involved in the robberies the day before. An officer who responded to the scene also saw the Towncar drive by the gathering a few minutes before Jackson returned.

Several days later, this same officer spotted the Towncar parked approximately one mile from the house where Jackson and Phillips lived with other family members. The officer determined that the car was Robert Proctor's stolen vehicle and reported the discovery, as well as the connection between Jackson and the Towncar. Based on information gathered from all of the incidents, the police obtained a search warrant for Phillips and Jackson's residence. Inside the house, officers found four bandanas in a bathroom linen closet, bullets in the pocket of a jacket, and a car stereo in a backpack. Phillips, who was present during the search, told officers that the jacket containing the bullets and the backpack holding the stereo belonged to him. He also admitted that he had ridden inside the Lincoln Towncar and believed it was stolen. The police later identified the stereo as an item taken from Proctor's car.

In Indictment No. 06R1231 ("the robbery indictment"), the State charged Phillips and Jackson with numerous crimes arising out of the Proctor, Pollard, and Flynn robberies. Jackson was charged separately in Indictment No. 06R1364 ("the assault indictment") with the aggravated assault of his cousin and the cousin's friend. Both indictments were tried together, and pursuant to the robbery indictment, the jury found the defendants guilty of armed robbery, criminal attempt to commit armed robbery, aggravated assault, and possession of a firearm during the commission of a crime in connection with the Pollard and Flynn incidents. Jurors also found both men guilty of theft by receiving stolen property. As to the Proctor incident, however, the jury concluded that Jackson and Phillips were not guilty of the crimes charged. Finally, the jury found Jackson guilty of the two aggravated assault charges in the assault indictment.

Following a motion for new trial, the trial court concluded that it had committed a charging error that impacted the jury's verdicts regarding the Flynn incident. It granted a new trial as to those charges, leaving intact the verdicts as to the Pollard offenses, theft by receiving stolen property, and the aggravated assaults in the

assault indictment.

### Case No. A11A0875

1. Jackson challenges his convictions for the Pollard crimes and theft by receiving stolen property. He claims that these charges, which arose from the robbery indictment, should not have been tried with the two aggravated assault charges in the assault indictment. We disagree.

"A trial court has discretion to conduct a joint trial on two separate indictments where the joinder is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." (Punctuation and footnotes omitted.) *Thomas v. State*, 254 Ga. App. 226, 229 (2) (561 SE2d 444) (2002). In resolving a joinder issue, the underlying consideration is "whether undue or great risk of prejudice from a joint disposition of charges would result." (Punctuation and footnote omitted.) Id.

Although Jackson argues that the charges in the two indictments were unrelated, the trial court did not abuse its discretion in finding otherwise. The State offered evidence that on November 18, 2005, Jackson and Phillips took part in three armed robberies that all involved, in some way, guns and a tan or gold Lincoln Towncar. The following day, Jackson threatened two people with a gun at a party after he was seen standing by this same type of vehicle. We recognize that Phillips did not participate in the November 19 assaults, and those crimes involved threats at a family party, rather than robbery of strangers. Investigation of the assaults, however, helped police connect Jackson to the November 18 armed robberies, which in turn led to the search of his house, discovery of the stolen car stereo, and a further link to Phillips. Given these circumstances, the trial court was authorized to find that the events in the two indictments — committed within a two-day period and involving guns and a Lincoln Towncar — constituted a series of connected acts.

Moreover, the trial court properly found that joint disposition of the indictments was not prejudicial. Joinder causes no harm when evidence of one crime is admissible in the trial of another. See *Mann v. State*, 264 Ga. App. 631, 635 (5) (591 SE2d 495) (2003), overruled on other grounds by *Kaiser v. State*, 285 Ga. App. 63, 68 (1) (646 SE2d 84) (2007); *Weaver v. State*, 206 Ga. App. 560, 561 (1) (426 SE2d 41) (1992). Here, the connection between the robberies and the assaults committed the following day helped identify Jackson and Phillips as the robbers. Such identifying evidence certainly was relevant to the State's case in the robbery indictment. See *Buice v. State*, 289 Ga. App. 415, 417 (2) (657 SE2d 326) (2008). And in prosecuting the assault indictment, the State could introduce evi-

dence that a witness saw Jackson at the scene of the assaults next to a stolen car that had been used in several armed robberies. See *Shields v. State*, 203 Ga. App. 538, 539 (1) (417 SE2d 168) (1992) (State may inform jurors of all circumstances surrounding the commission of a crime, even if that information incidentally places a defendant's character into issue).

Because evidence of the various, intertwined crimes would have been admissible against Jackson had the indictments been tried separately, joinder was not prejudicial or erroneous. See *Mann*, supra; *Weaver*, supra. Accordingly, the trial court properly consolidated the indictments for trial. See *Thomas*, supra.

2. Jackson asserts generally that the evidence did not support his convictions relating to the Pollard incident and theft by receiving stolen property. On appeal, however, his argument focuses solely on the joinder issue. Although he mentions the sufficiency of the evidence in that context, claiming that absent joinder, the State would not have been able to link him to the Lincoln Towncar and the robberies, joinder was appropriate here. This argument, therefore, lacks merit.

To the extent Jackson intended to question the sufficiency of the evidence on another basis, his claim of error has been abandoned. Pursuant to Court of Appeals Rule 25 (c) (2), "[a]ny enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned." Other than briefly challenging the evidence in the joinder context, Jackson has made no effort to support the sufficiency claim with argument or citation of authority. Accordingly, we will not address this claim further. See *McClendon v. State*, 264 Ga. App. 174, 177 (2) (590 SE2d 189) (2003); *Griffin v. State*, 237 Ga. App. 753, 753-754 (1) (516 SE2d 588) (1999); Court of Appeals Rule 25 (c) (2).

3. Jackson asserts that the trial court erred in admitting in-court identification testimony, but he has not supported this claim of error with argument or citation of authority in his brief. The claim is thus deemed abandoned. See Court of Appeals Rule 25 (c) (2).

*Case No. A11A0876*

4. In this appeal, Jackson challenges his aggravated assault convictions, again arguing that the trial court erred in joining his indictments for trial. As found in Division 1, joinder was appropriate. Accordingly, this enumeration of error lacks merit.

5. Similar to Case No. A11A0875, Jackson claims that the evidence did not support his aggravated assault convictions and that the trial court erroneously allowed in-court identification testimony. Jackson's sufficiency argument, however, rests solely on his claim

that the trial court erred in joining the two indictments. This argument lacks merit. He has offered no other argument or citation of authority supporting these allegations of error, and we will not review them further. See Court of Appeals Rule 25 (c) (2).

### Case No. A11A0877

6. Phillips challenges the sufficiency of the evidence supporting his convictions for the attempted armed robbery of Jermond Pollard, the armed robbery of Pollard's mother-in-law, the aggravated assault of Pollard, possession of a firearm during the commission of a crime in connection with the Pollard incident, and theft by receiving stolen property. When reviewing this challenge to the sufficiency of the evidence, we do not weigh the evidence or resolve issues of witness credibility. We merely determine whether the evidence, construed favorably to the verdicts, authorized the jury to find Phillips guilty beyond a reasonable doubt. See *Buice*, supra at 415 (1).

The evidence shows that two armed men threatened Pollard and his mother-in-law with guns, demanded money, and took the mother-in-law's purse. Pollard identified Phillips as the driver of the stolen Lincoln Towncar used as a getaway vehicle, noting that he was wearing a bandana like those worn by the robbers. Phillips later admitted to police that he knew the Towncar had been stolen. Based on this evidence, which demonstrates Phillips's participation in the Pollard incident and his possession of or control over the stolen vehicle, the jury was authorized to find Phillips guilty of the crimes charged. See *Yancey v. State*, 281 Ga. 664, 665 (1) (641 SE2d 524) (2007) (driver of getaway vehicle guilty of crimes connected with shooting even though he did not fire gun); OCGA § 16-2-20 (a) ("Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."); *Brown v. State*, 289 Ga. App. 421, 423 (2) (657 SE2d 322) (2008) (jury authorized to find driver of stolen car guilty of theft by receiving).

7. Although the evidence supports the jury's verdicts, we agree with Phillips that the State's *Brady* violation requires reversal. Without dispute, the State failed to turn over to the defense a written statement that Jermond Pollard gave to police. In the statement, Pollard asserted that he and his mother-in-law were robbed by two armed men. He did not mention a third participant in a getaway car. Pollard testified at trial, however, that not only was a third man involved, but Phillips was this third individual. In his motion for new trial, Phillips argued that the State's failure to disclose Pollard's written statement deprived him of the opportunity to impeach Pollard with the statement's omission. The trial court denied Phil-

lips's motion.

To prevail on a *Brady* claim, a defendant must demonstrate that (1) the State possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not obtain it with any reasonable diligence; (3) the prosecution suppressed the evidence; and (4) "had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceeding would have been different." *Blackshear v. State*, 285 Ga. 619, 622 (5) (680 SE2d 850) (2009). The *Brady* disclosure requirements extend to impeachment evidence, and such evidence is generally material where the witness at issue "supplied the only evidence linking [the] defendant to the crime." (Punctuation omitted.) *Walker v. Johnson*, 282 Ga. 168, 170 (2) (646 SE2d 44) (2007).

The record shows that the police possessed Pollard's pretrial statement, which was not disclosed to Phillips in discovery before or during trial. Moreover, on the day of trial, defense counsel specifically asked whether the State had any statements given by Pollard, and the prosecutor responded that it did not. The State does not dispute that, based on this evidence, Phillips meets the first three *Blackshear* requirements. Instead it argues — and the trial court found — that Phillips cannot satisfy the fourth requirement.

Addressing this requirement, the trial court noted that Pollard's description of events was memorialized not only in his written statement, but in police reports prepared by two different officers who responded to the robbery scene. The first report, written by Officer Herbert Denton, closely tracks Pollard's written statement and, like the statement, does not mention a third participant in the robbery. The report from the second officer, Janeen Lavoie, is more detailed. According to Lavoie's report, Pollard indicated that three men were involved, including the driver of the getaway car. Focusing on the police reports, the trial court determined that the defense knew the substance of Pollard's written statement before trial and could have cross-examined Pollard about any omissions. It thus found no likelihood that disclosure of the written statement would have altered the trial outcome.

The trial court clearly based its conclusion on the contents of both police reports. At the hearing on Phillips's motion for new trial, however, defense counsel testified that he only received a copy of Lavoie's report, which mentioned three participants. He denied receiving Denton's report, and the State did not contest this point, assert that Denton's report was provided in discovery, or submit evidence of such disclosure. The record thus demonstrates that the defense had access to a police report mentioning three participants, but did not receive the report referencing only two perpetrators. Pollard's impeachable omission, therefore, was not known to the

defense before or during trial.

Pollard was the only witness who identified Phillips as a participant in this particular robbery and the driver of the Towncar. Although other evidence helped link Phillips to the crime spree, such evidence was not overwhelming or directly related to the Pollard incident, and the jury acquitted Phillips of participation in the first robbery involving Robert Proctor. Given these circumstances, as well as the impeachment value of Pollard's written statement, we agree with Phillips that the statement was material to the defense and, had it been disclosed, the outcome of this case might have been different. See *Walker*, supra at 170-172; see also *Pye v. State*, 269 Ga. 779, 786-787 (14) (505 SE2d 4) (1998) (witness may be impeached through misstatements or omissions in pretrial statement). Accordingly, the trial court erred in denying Phillips's motion for new trial based on the *Brady* violation. See *Gonnella v. State*, 286 Ga. 211, 215-216 (2) (686 SE2d 644) (2009); *Walker*, supra.

8. Because the issue may arise on retrial, we will address Phillips's claim that the trial court improperly restricted his use of a photograph at trial. Phillips sought to present evidence that his hairstyle in November 2005 did not match the low cut hairstyle purportedly worn by the robbers. Specifically, he wanted to ask witnesses whether his November 2005 hairstyle resembled that depicted in a June 2005 mug shot, which showed him with a "twist dreadlock" style. The trial court ruled that the defense could only tender the photograph if it laid a foundation by establishing who took the picture, where it was taken, and why it was taken. Not wanting to inform the jury that Phillips had been arrested in June 2005 for a crime unrelated to the robberies, the defense did not tender the photograph.

On appeal, Phillips argues that the trial court erred in insisting that the defense establish the circumstances surrounding the mug shot before asking witnesses whether it accurately depicted his hairstyle at the time of the robberies. We agree. A party lays a foundation for a photograph by showing that it fairly and accurately represents the object, scene, or person depicted. See *Davis v. State*, 253 Ga. App. 803, 806 (6) (560 SE2d 711) (2002); *Jones v. State*, 161 Ga. App. 218 (1) (288 SE2d 293) (1982). "[A]ny witness familiar with the subject depicted can authenticate a photograph; the witness need not be the photographer nor have been present when the photograph was taken." (Footnote omitted.) *Davis*, supra.

Phillips was not required to identify when, where, and why the photograph was taken to establish a foundation. He only needed to establish that it accurately depicted him. *Davis*, surpa. The trial court erred in ruling otherwise.

9. Given our decision in Division 7, Phillips's remaining claims of error are moot.

*Judgment affirmed in Case Nos. A11A0875 and A11A0876. Judgment reversed and case remanded in Case No. A11A0877. Phipps, P. J., and Andrews, J., concur.*

DECIDED JUNE 6, 2011.

*Phillips & Nemajovsky, Mark T. Phillips*, for appellant (case nos. A11A0875 and A11A0876).

*Kevin Armstrong*, for appellant (case no. A11A0877).

*Gregory W. Edwards, District Attorney, Matthew Breedon, Assistant District Attorney*, for appellee.