297 Ga. 29
FINAL COPY

S15A0147, S15X0148.  DANFORTH v. CHAPMAN; and vice versa.

BENHAM, Justice.

Justin W. Chapman was convicted of arson and felony murder regarding a 2006 fire that was intentionally set outside the front door of his duplex apartment, resulting in the death of a resident who lived on the other side of the duplex.  We affirmed Chapman's conviction in Chapman v. State, 290 Ga. 631 (724 SE2d 391) (2012).  Chapman filed a petition for habeas relief, asserting six substantive claims: ineffective assistance of trial counsel; ineffective assistance of appellate counsel; Brady/Giglio violations;[1] Crawford v. Washington violations;[2] prosecutorial misconduct; and actual innocence.  The habeas court granted relief, finding that there were three Brady/Giglio violations and a violation of Crawford v. Washington.  In addition, the habeas court found Chapman's appellate

---

[1]  Giglio v. United States, 405 U. S. 150 (92 SCt 763, 31 LE2d 104) (1972); Brady v. Maryland, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

[2]  Crawford v. Washington, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004).

counsel was ineffective for failing to investigate the case and for failing to raise the Brady and Crawford violations on appeal. The habeas court did not reach Chapman's remaining habeas claims. The Warden appeals, and Chapman has filed a cross-appeal. For reasons set forth below, Case No. S15A0147 is affirmed, and Case No. S15X0148 is dismissed.

Case No. S15A0147

1. The Warden complains that the habeas court denied its request to submit a post-hearing brief. The Warden has failed to set forth any authority that requires the habeas court to allow the filing of post-hearing briefs. This allegation of error is without merit.

2. The Warden argues that the habeas court erred when it determined Chapman was entitled to a new trial as relief for the prosecutor's suppression of certain evidence that was helpful to the defense. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U. S. 83, 87 (83 SCt 1194, 10 LE2d 215) (1963). This includes the suppression of impeachment evidence that may be used to

2

challenge the credibility of a witness. See <u>Giglio v. United States</u>, 405 U. S. 150, 154-155 (92 SCt 763, 31 LE2d 104) (1972). See also <u>Schofield v. Palmer</u>, 279 Ga. 848 (2) (621 SE2d 726) (2005). To prevail on a <u>Brady</u> claim, Chapman was required to show that

> (1) the State possessed evidence favorable to his defense; (2) he did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the trial would have been different. [Cit.]

<u>Walker v. Johnson</u>, 282 Ga. 168 (2) (646 SE2d 44) (2007).

The record shows that Joseph White was in the same cell block of the Haralson County jail with Chapman a few days following Chapman's arrest. At trial, White testified that Chapman admitted starting the fire that killed the victim. White was the only State witness who testified that Chapman had confessed to arson. It is uncontroverted that at the time White testified,

3

several items of favorable evidence in the State's possession had not been disclosed to the defense.[3]

The first item was a video recording of an interview that occurred on August 2, 2006, between White and the district attorney who prosecuted the case against Chapman. The video recording transcript shows a discussion between White and the prosecutor indicating White was seeking assistance with the charges White was facing at that time,[4] in exchange for the information White had about Chapman's case. During Chapman's trial, however, White denied seeking any type of assistance with his then-pending charges in exchange for testimony in Chapman's case. The non-disclosure of the video had the effect of depriving Chapman of his ability to fully cross-examine White. See Gonella v. State, 286 Ga. 211 (2) (686 SE2d 644) (2009) ("it is the deprivation of [a defendant's] ability to fully cross-examine [the witness] based upon the [undisclosed evidence] that constitutes the denial of due process").

---

[3] Accordingly, the first, second, and third prongs of the test are not at issue in this case.

[4] By the time of Chapman's trial in June 2007, White had been tried and acquitted of the charges at issue in August 2006.

Similarly, when the State failed to disclose the substantive statements that a potential witness, William Liner, made to the prosecutor concerning Chapman's alleged jailhouse confession, Chapman was denied the ability to take advantage of favorable evidence in support of his defense. Liner was also housed in the Haralson County jail with White and Chapman, and White identified Liner as someone who had heard Chapman confess to arson. A few days before Chapman's trial was set to commence, the prosecutor went to interview Liner at the state prison where Liner was incarcerated. Liner told the prosecutor he never heard Chapman confess. In addition, Liner had knowledge that White was actively seeking help with his then-pending charges. In response to these revelations, the prosecutor canceled the order requiring Liner's production at trial, and Liner never testified at Chapman's trial. The prosecutor never disclosed Liner's statements to the defense. Because Liner's statements would have contradicted White's testimony that Chapman confessed and that other people heard Chapman confess, and would have contradicted White's testimony that he was not seeking help with his charges, the defense was

5

denied the opportunity to impeach White. Gonella v. State, supra, 286 Ga. at 216.

During pre-trial discovery, the prosecutor faxed the defense a document that contained a copy of an addressed envelope, a one-page cover letter, and a five-page statement in which White set forth what he purportedly knew about Chapman and the fire. White had sent the cover letter and statement to his pastor. Unknown to the defense, the second page of the cover letter was missing from the facsimile sent to her by the prosecutor. It was not readily discernible that the page was missing because the first page of the cover letter ended with a complete sentence. At trial, the prosecutor admitted the original document, containing both pages of the cover letter; but he proffered it through the testimony of an investigative officer *after* White's trial testimony and *after* White had been released from his trial subpoena. Defense counsel assumed the document admitted at trial was the same document that had been produced to her via fax and did not closely examine the trial exhibit when it was proffered by the prosecutor. During the habeas proceedings, it was shown that the missing second page contained the following statement written by White: "Hold off on giving my

6

statement to police. I want to see what's going on for a few days." This evidence contradicted White's trial testimony that he went to police immediately with details about the arson, as well as undermined his testimony that he was not seeking help from authorities with his own charges. Again, had defense counsel been aware of this statement at the time of White's trial testimony, she could have used it for the purposes of impeachment.

Since White was the only witness who said Chapman confessed to arson, the evidence described above, which impeached and/or cast doubt on White's credibility, was material to Chapman's defense. See Jackson v. State, 309 Ga. App. 796 (7) (714 SE2d 584) (2011). The videotape, Liner's statements to the prosecutor, and the missing page from White's cover letter to his pastor all constitute favorable evidence which could have been used by the defense to show contradictions or inconsistencies in White's trial testimony and other evidence,[5] creating a reasonable probability that the outcome of the trial would have been different under the fourth prong of the

[5] Some of the statements White made in the undisclosed August 2, 2006, video interview with the prosecutor were inconsistent with a disclosed August 30, 2006, audio-recorded interview between White and one of the investigators.

test.  Id.  Accordingly, the habeas court did not err when it awarded Chapman habeas relief pursuant to <u>Brady</u> and <u>Giglio</u>.

3.  Since Chapman is entitled to a new trial, the Warden's remaining allegations of error are moot.  See <u>Walker v. Johnson</u>, supra, 282 Ga. at 172; <u>Schofield v. Palmer</u>, supra, 279 Ga. at 853.

<u>Case No. S15X0148</u>

4.  Inasmuch as we have affirmed the grant of the writ of habeas corpus in this case, Chapman's cross-appeal is dismissed as moot.

<u>Judgment affirmed in Case No. S15A0147.  Appeal dismissed in Case No. S15X0148.  All the Justices concur.</u>


Decided April 20, 2015.

Habeas corpus. Telfair Superior Court. Before Judge Mullis.

<u>Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General; Daniel M. King, Jr.</u>, for appellant.

<u>Bondurant, Mixson & Elmore, Emmet J. Bondurant II, John H. Rains IV, Michael A. Caplan; Hogue & Hogue, Franklin J. Hogue</u>, for appellee.